**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Reynaldo DIAZ, Defendant–Appellant.**

**No. 88–1449.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 14, 1988.
Decided Dec. 29, 1988.

William H. Theis, Chicago, Ill., for defendant-appellant.

Matthew R. Bettenhausen, Asst. U.S. Atty., Anton R. Valukas, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before CUDAHY, RIPPLE, and KANNE, Circuit Judges.

RIPPLE, Circuit Judge.

This is a direct appeal from a federal criminal conviction. After a jury trial, the appellant, Reynaldo Diaz, was convicted of conspiracy to distribute cocaine, possession and distribution of cocaine, and use of a firearm in relation to the commission of a drug trafficking crime. Mr. Diaz raises two issues. First, Mr. Diaz alleges that his conviction for use of a firearm was based improperly on his conviction on the conspiracy charge. Second, he alleges that the district court erred when it gave a conscious avoidance of knowledge instruction, commonly referred to as the "ostrich instruction." For the following reasons, we affirm the judgment of the district court.

## I

## BACKGROUND

On October 8, 1987, a six-count indictment was filed, charging six defendants with various drug-related offenses. Four of the defendants pleaded guilty. Jose Pineiro and the appellant, Reynaldo Diaz, were tried together. The jury acquitted Pineiro. Mr. Diaz was convicted of conspiracy to possess and distribute cocaine in violation of 21 U.S.C. § 846, possession and distribution of cocaine in violation of 21 U.S.C. § 841(a)(1), and use of a firearm in relation to the commission of "drug trafficking crime[s]" in violation of 18 U.S.C. § 924(c)(1). Mr. Diaz was sentenced to five years on each of the three counts. The sentences on the possession and distribution count and the firearm count were to run consecutively with each other and concurrently with the sentence on the conspiracy count. In addition, the district court sentenced Mr. Diaz to a four-year period of supervised release on the possession and distribution count.

## II

## FACTS

The indictment in this case charged Gerardo Perez, Luis Rodriguez, David Peirallo, Jose Pineiro, Carmen Diaz, and Reynaldo Diaz with conspiring to possess and distribute cocaine. It alleged that the conspiracy successfully distributed cocaine on four separate occasions: July 23, 1987; August 21, 1987; September 3, 1987; and September 9, 1987. The last transaction allegedly involved the sale of a kilogram of cocaine to a Drug Enforcement Administration (DEA) agent. Peirallo, Perez, Rodriguez, and Carmen Diaz pleaded guilty. At trial,

the last three testified as coconspirators against Reynaldo Diaz and Jose Pineiro. Through these witnesses, the government maintained that Mr. Diaz was the supplier of the cocaine on three of the four occasions. Mr. Diaz's defense was that, although he knew some of the coconspirators, he had played no part in their illegal activities.

The testimony at trial revealed the following. A DEA agent purchased cocaine from Carmen Diaz (no relation to the appellant) and Perez on July 23, 1987. There was no testimony that Reynaldo Diaz was involved in this sale. Perez was just beginning to deal in drugs and contacted Rodriguez in an effort to find a supplier of cocaine. Rodriguez testified that he knew somebody who could "help [Perez] out" and arranged a meeting between himself, Perez, and Mr. Diaz. R.166 at 160. Rodriguez had known Mr. Diaz since 1977. After the meeting, Mr. Diaz agreed to supply drugs to Perez.

On August 21, 1987, and again on September 3, 1987, Perez sold two ounces of cocaine to DEA Agent Patricia Collins. Perez testified that he obtained these drugs from Mr. Diaz. Although Mr. Diaz was not present for either sale, Perez testified that the second sale occurred a half-block from Mr. Diaz's house so that Mr. Diaz could see the buyer. Rodriguez and Perez also testified that they dropped the money off at Mr. Diaz's house after the second sale. This assertion could not be verified by agents circulating in the neighborhood at the time.

On September 9, 1987, Perez and Rodriguez went to a designated location; they were to meet with Mr. Diaz to sell one kilogram of cocaine to Agent Collins. Upon their arrival, Mr. Diaz was not present. Telephone records introduced at trial corroborated that Perez and Rodriguez telephoned Mr. Diaz. Testimony of Perez and Rodriguez at trial revealed that Mr. Diaz thought the deal was going to take place closer to his home but agreed to join the men in ten to fifteen minutes. Approximately five minutes after Mr. Diaz arrived, Peirallo arrived. Peirallo had brought the kilogram of cocaine from Miami, Florida to Chicago, Illinois earlier that same day.

The parties waited an hour for Agent Collins. Peirallo became impatient and decided to leave the scene. He asked to be paged telephonically when Agent Collins arrived. Almost as soon as Peirallo left, Agent Collins arrived. Telephone records and testimony confirmed that Mr. Diaz telephoned Peirallo's pager. Perez joined Agent Collins in her car, counted the money, and then met with Mr. Diaz to confirm that Peirallo was on his way. Perez returned to Agent Collins' car to await Peirallo's arrival. Almost immediately, Mr. Diaz sent Rodriguez to Agent Collins' car to announce that Peirallo was arriving. After Peirallo had arrived and parked, the cars were lined up so that Peirallo's was first in line, Mr. Diaz's was the middle car and Agent Collins' car was the last car parked in line.

The officers engaged in surveillance testified that there was a great deal of movement and conversation among Mr. Diaz, Peirallo, and Rodriguez. When Peirallo arrived, Mr. Diaz and Rodriguez moved to Mr. Diaz's car; Mr. Diaz opened the hood of his car. The government and the appellant have conflicting theories about why the hood of the car was opened. Mr. Diaz claims the hood was opened because he was having car trouble. The government, in contrast, asserts that opening a car hood is a standard method by which drug dealers prevent their buyers from seeing the supplier of the drugs. Around the time the hood was raised, Perez left Agent Collins' car and went to Peirallo's car. Peirallo told Perez that he had a gun which he intended to use if anyone tried to steal the drugs. While Perez was with Peirallo, Mr. Diaz and Rodriguez continued to stand by Mr. Diaz's car watching Agent Collins. Perez took the drugs to Agent Collins. Agent Collins then gave the arrest signal.

Mr. Diaz did not testify. However, through the presentation of witnesses and the argument of counsel, he submitted that he was merely visiting friends in the neighborhood and was at the arrest scene be-

cause his car had broken down. Mr. Diaz claimed that he telephoned a mechanic. The mechanic testified that he was called, but the telephone records did not reveal that the mechanic's number had been dialed. The officers who observed the transaction testified that at no time did anyone examine the engine. Mr. Diaz asserts that he neither knew of, nor played any part in, the conspiracy.

Before the judge instructed the jury, the appellant's counsel objected to the use of a conscious avoidance of knowledge instruction (ostrich instruction) that was submitted by the government. The district court overruled the objection. It held that counsel for Mr. Diaz had raised the issue in his opening statement and cross-examination of the government witnesses. Counsel for appellant also objected to the government instruction that permitted the conspiracy count to be considered a "drug trafficking crime" for purposes of conviction under the firearm possession charge.

## III

## ANALYSIS

### A. *Firearm Conviction*

#### 1.

██ Mr. Diaz was convicted of using and carrying a firearm during and in relation to the commission of drug trafficking crimes.[1]

As a result of this conviction, Mr. Diaz was sentenced to an additional five years in prison. The government did not submit evidence at trial that Mr. Diaz was armed. Rather, it contended that Peirallo's carrying of a firearm could be imputed to Mr. Diaz because of their joint membership in the conspiracy. On appeal, Mr. Diaz submits that conspiracy to possess or distribute a controlled substance is not a "drug trafficking crime" as defined by 18 U.S.C. § 924(c). He contends that the instructions to the jury were erroneous because they allowed his conviction for the use of a firearm to be based on his participation in such a conspiracy. The government replies that the statute's "language is quite clear that *any* violation *involving* distribution is included...." Appellee's Br. at 21 (emphasis in original). The government asserts that the statute is not ambiguous on its face and, therefore, "[c]ourts 'must assume that Congress used the words of the statute as they are commonly and ordinarily understood.'" *Id.* (quoting *United States v. Rawlings*, 821 F.2d 1543, 1545 (11th Cir.), *cert. denied,* ── U.S. ──, 108 S.Ct. 494, 98 L.Ed.2d 492 (1987)).

We agree with the government's argument that the plain wording of the statute permits a defendant to be convicted of carrying a firearm in relation to the "drug trafficking crime" of conspiracy to possess and distribute cocaine. *See* 21 U.S.C.

---

1. Mr. Diaz was convicted under section 924(c)(1) of title 18 of the United States Code. The statute reads as follows:

    (c)(1) Whoever, during and in relation to any crime of violence or drug trafficking crime,, [sic] including a crime of violence or drug trafficking crime, which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device, for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime,, [sic] be sentenced to imprisonment for five years.... Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person convicted of a violation of this subsection, nor shall the term of imprisonment imposed under this subsection run concurrently with any other term of imprisonment including that imposed for the crime of violence or drug trafficking crime, or drug trafficking crime in which the firearm was used or carried. No person sentenced under this subsection shall be eligible for parole during the term of imprisonment imposed herein.

    (2) For purposes of this subsection, the term "drug trafficking crime" means any felony violation of Federal law involving the distribution, manufacture, or importation of any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)).

    (3) For purposes of this subsection the term "crime of violence" means an offense that is a felony and—

    (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

    (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

§ 846. Because section 924 defines a drug trafficking crime as "any felony violation of Federal law involving distribution ...," the plain language of the statute includes the federal violation of conspiracy to distribute.

Even if it were open to us to ignore such plain language, we would reach the same result. Our law has long acknowledged the "special and continuing dangers incident to group activity." W. Lafave & A. Scott, Jr., Substantive Criminal Law § 6.4 (1986). As the Supreme Court noted in *Callanan v. United States*, 364 U.S. 587, 81 S.Ct. 321, 5 L.Ed.2d 312 (1961):

> Concerted action both increases the likelihood that the criminal object will be successfully attained and decreases the probability that the individuals involved will depart from their path of criminality. Group association for criminal purposes often, if not normally, makes possible the attainment of ends more complex than those which one criminal could accomplish. Nor is the danger of a conspiratorial group limited to the particular end toward which it has embarked. Combination in crime makes more likely the commission of crimes unrelated to the original purpose for which the group was formed. In sum, the danger which a conspiracy generates is not confined to the substantive offense which is the immediate aim of the enterprise.

364 U.S. at 593–94, 81 S.Ct. at 325. *Accord United States v. Williams*, 798 F.2d 1024, 1040 (7th Cir.1986). We shall not attribute to Congress the intent to punish other drug-distribution related activity where a gun is carried while exempting conspiracy, a situation that is traditionally considered more dangerous. In *United States v. Stewart*, 779 F.2d 538 (9th Cir.1985), *cert. denied*, — U.S. ——, 108 S.Ct. 192, 98

L.Ed.2d 144 (1987), Judge (now Justice) Kennedy noted that, in enacting the statute, Congress intended to make punishable a situation where "the firearm facilitated or had a role in the crime, such as emboldening an actor who had the opportunity or ability to display or discharge the weapon to protect himself or intimidate others...." *Id.* at 540. Certainly, a weapon can play such a role in a conspiracy. Indeed, here, Peirallo made a point of telling Perez that he had a gun and that he intended to use it if necessary. The weapon certainly did "embolden" Peirallo and encouraged continued adherence to the conspiracy. Its use supports a conviction under section 924.

■ The firearm violation under section 924(c)(1) may be imputed to other members of the conspiracy, including Mr. Diaz, under *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). In *Pinkerton*, the Supreme Court held that a party to a continuing conspiracy may be responsible "when the substantive offense is committed by one of the conspirators in furtherance of the [conspiracy]," even though he does not participate in the substantive offense or have any knowledge of it. *Id.* at 647, 66 S.Ct. at 1184. In *United States v. Gironda*, 758 F.2d 1201 (7th Cir.), *cert. denied*, 474 U.S. 1004, 106 S.Ct. 523, 88 L.Ed.2d 456 (1985), this circuit discussed the application of the *Pinkerton* doctrine to section 924(c).[2] The defendants in *Gironda* were charged with conspiracy to rob a bank and with violating 18 U.S.C. § 924(c) by unlawfully carrying a gun in the commission of a felony. The defendants were convicted on both counts and on appeal argued that their convictions under section 924(c) were the result of an unwarranted extension of the *Pinkerton* doctrine. The trial court had instructed the

18 U.S.C. § 924(c).

**2.** This court was analyzing the relationship between the *Pinkerton* doctrine and section 924(c) before its 1986 amendment. The language of the statute before the *Gironda* court was,

> (c) Whoever—
> (1) uses a firearm to commit any felony for which he may be prosecuted in a court of the United States, or

> (2) carries a firearm unlawfully during the commission of any felony for which he may be prosecuted in a court of the United States,

shall, in addition to the punishment provided for the commission of such felony, be sentenced to a term of imprisonment for not less than one year nor more than ten years.

The amended statute increased the penalty. Nevertheless, the analysis in *Gironda* is still applicable.

jury that it could convict the defendants of violating section 924(c) "if it found them guilty of conspiracy ... and if the government proved beyond a reasonable doubt '[f]irst, that the [firearm offense] ... was committed; second, that the offense was committed pursuant to and in furtherance of the conspiracy; and third, that the defendant was a member of the conspiracy at the time the offense was committed.'" *Id.* at 1211. Essentially, the same instruction was used in this case. The jury was instructed that:

> To sustain the charge in Count Six as to defendant Reynaldo Diaz, of using and carrying a firearm during and in relation to a drug trafficking crime, the government must prove the following propositions:
>
> First, the defendant David Peirallo is guilty of the offense charged in Count Six of the indictment;
>
> Second, the defendant David Peirallo committed the offense charged in Count Six in furtherance of or as a natural and foreseeable consequence of the conspiracy charged in Count one [sic] of the indictment; and
>
> Third, defendant Reynaldo Diaz was a member of the conspiracy at the time defendant David Peirallo committed the offense charged in Count Six.
>
> If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant Reynaldo Diaz guilty of Count Six of the indictment.
>
> If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find defendant Reynaldo Diaz not guilty of Count Six.

R. 145. This circuit has interpreted *"Pinkerton* to mean that each conspirator may be liable for 'acts of every other conspirator done in furtherance of the conspiracy.'" *Gironda,* 758 F.2d at 1211 (quoting *United States v. Read,* 658 F.2d 1225, 1230 (7th Cir.1981)). Therefore, Peirallo's possession of a gun during the cocaine sale

may be imputed to Mr. Diaz. The *Pinkerton* analysis in *Gironda* supports Mr. Diaz's conviction on the firearm count.

There is, of course, one established exception to the *Pinkerton* doctrine. A conspirator may be found guilty of a substantive crime *unless* that crime "could not be reasonably foreseen as a necessary or natural consequence of the unlawful agreement." *Pinkerton,* 328 U.S. at 648, 66 S.Ct. at 1184. However, the illegal drug industry is, to put it mildly, a dangerous, violent business. When an individual conspires to take part in a street transaction involving a kilogram of cocaine worth $39,-000, it certainly is quite reasonable to assume that a weapon of some kind would be carried.

### B. *Ostrich Instruction*

#### 1.

■ Mr. Diaz asserts that the district court erred when it gave the jury an ostrich instruction. The district court instructed the jury as follows:

> You may infer knowledge from a combination of suspicion and indifference to the truth. If you find that a person had a strong suspicion that things were not what they seemed or that someone had withheld some important facts, yet shut his eyes for fear of what he would learn, you may conclude that he acted knowingly, as I have used that word.

R. 145.

In *United States v. Ramsey,* 785 F.2d 184, 190 (7th Cir.), *cert. denied,* 476 U.S. 1186, 106 S.Ct. 2924, 91 L.Ed.2d 552 (1986), we approved a district court's use of the ostrich instruction in connection with a charge of "knowing misrepresentation." We have also held, contrary to the precedent in the Second Circuit, *see United States v. Mankani,* 738 F.2d 538, 547 & n. 1 (2d Cir.1984), that such an instruction is permissible with respect to a conspiracy charge. *United States v. Kehm,* 799 F.2d 354, 362 (7th Cir.1986). However, this instruction, like all instructions, should be given only when it addresses an issue reasonably raised by the evidence. "A conscious avoidance instruction is 'properly

given only when the defendant claims a lack of guilty knowledge and there are facts and evidence that support an inference of deliberate ignorance.'" *United States v. White*, 794 F.2d 367, 371 (8th Cir.1986) (quoting *United States v. McAllister*, 747 F.2d 1273, 1275 (9th Cir.1984), *cert. denied*, 474 U.S. 829, 106 S.Ct. 92, 88 L.Ed.2d 76 (1985)). *See also United States v. Littlefield*, 840 F.2d 143, 147 (1st Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 155, 102 L.Ed.2d 126 (1988). Indeed, the Ninth Circuit has held that "if the evidence indicates that [the defendants] had either actual knowledge or lacked any knowledge ... then giving the [conscious avoidance] instruction was inappropriate." *United States v. Alvarado*, 838 F.2d 311, 314 (9th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 2880, 101 L.Ed.2d 915 (1988). The Tenth Circuit also has stated that, "if the evidence against the defendant points solely to direct knowledge of the criminal venture, it would be error to give the [ostrich] instruction." *United States v. Manriquez Arbizo*, 833 F.2d 244, 248–49 (10th Cir. 1987).

> The purpose of the ostrich instruction is: to alert the jury to the fact that the act of avoidance of knowledge of particular facts may itself circumstantially show that the avoidance was motivated by sufficient guilty knowledge to satisfy the statute.... It informs the jury that it may look at the charade of ignorance as circumstantial proof of knowledge. It does not authorize conviction of one who in fact does not have guilty knowledge. One can in fact not know many detailed facts but still have enough knowledge to demonstrate consciousness of guilty conduct sufficient to satisfy the "knowing" element of the crime. In effect, the instruction is nothing more than a refined circumstantial evidence instruction properly tailored to the facts of a case....

*Manriquez Arbizo*, 833 F.2d at 248; *see also United States v. Batencort*, 592 F.2d 916, 918 (5th Cir.1979). *See generally United States v. Bailey*, 859 F.2d 1265 (7th Cir.1988). The ostrich instruction has been principally employed where there is evidence that the defendant is associated with a group, but where there is also evidence that the defendant consciously was avoiding knowledge of the illegal nature of the group's activity. In most cases, the defendant acknowledges his association with the group but, despite circumstantial evidence to the contrary, denies knowledge of the group's illegal activity. For instance, the defendants in *Ramsey* were employees of an organization that was alleged to be a fraudulent loan brokerage enterprise. The court allowed the ostrich instruction because the defendants had claimed they were gullible and ignorant of what the company was doing. *Ramsey*, 785 F.2d at 191. In *United States v. Schwartz*, 787 F.2d 257 (7th Cir.1986), the defendants were charged with mail fraud. The court allowed the ostrich instruction in that case because defendants had alleged that they had "been gulled along with the insurance companies, and that they did not realize that they had been pawns in Schwartz's scheme...." *Id.* at 265. In *Kehm*, the defendant set up a corporation for friends. The corporation rented an airplane and it was used for smuggling drugs. The defendant admitted that he had set up the corporation and had arranged to rent the airplane, but he denied any knowledge of the smuggling operation. The evidence revealed that the defendant not only associated with the conspirators and that he was aware that directors of the company used pseudonyms but, more importantly, the defendant had left a meeting in which the use of the airplane was being discussed, stating that he did not want to hear about it. *Kehm*, 799 F.2d at 362. Finally, in *United States v. Josefik*, 753 F.2d 585 (7th Cir.), *cert. denied*, 471 U.S. 1055, 105 S.Ct. 2117, 85 L.Ed.2d 481 (1985), the defendant admitted that he helped arrange the transfer of scotch but denied that he knew the scotch was stolen. *Id.* at 589. The court found that under all of the circumstances, it was inconceivable that the defendant did not know that the scotch was stolen.

These cases are factually different from the present case. Mr. Diaz does not argue that, although he was participating in the group's activity, he had no knowledge that

the group illegally was selling drugs. Instead, he insists that he had nothing to do with the group's activity and was merely in the neighborhood because he was visiting friends and seeking repair of a disabled car. While the need for the instruction may be questionable, we hardly can say that it was reversible error to give it. This court has explained " 'that in determining the propriety of instructions, they are to be viewed as a whole.... As long as the instructions treat the issues fairly and adequately, they will not be interfered with on appeal.' " *United States v. Machi*, 811 F.2d 991, 1005 (7th Cir.1987) (quoting *United States v. Patrick*, 542 F.2d 381, 389 (7th Cir.1976), *cert. denied*, 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977)). In reviewing the district court's decision to give a particular instruction, we must view the evidence, and any reasonable inference therefrom, in the light most favorable to the government. *United States v. Johnson*, 605 F.2d 1025, 1028 (7th Cir.1979), *cert. denied*, 444 U.S. 1033, 100 S.Ct. 706, 62 L.Ed.2d 670 (1980). Here, the trial record contained ample evidence to support the inference that the defendant's *modus operandi* was to insulate himself from the actual drug transaction so that he could deny knowledge of it. During the other observed transactions, he had absented himself from the scene. On this occasion, while present, he argued that he was preoccupied with his disabled vehicle and did not know that he was standing in the middle of his friends' drug transaction. Nor, he submits, did he realize that by raising the automobile's hood, he actually facilitated the transaction. Under these circumstances, it was not error to give the instruction.

Moreover, we see no realistic possibility that the instruction confused the jurors. "The danger in giving the instruction where there is evidence of direct knowledge but no evidence of avoidance of knowledge is that the jury could still convict a defendant who merely should have known about the criminal venture." *Manriquez Arbizo*, 833 F.2d at 249; *see also White*, 794 F.2d at 371. That situation does not exist here. Moreover, in addition to the ostrich instruction, the jury was instructed properly that the government had to establish beyond a reasonable doubt that Mr. Diaz knowingly participated in the conspiracy. Both counsel argued strenuously this point. The jury was also instructed that:

> Mere presence at the scene of the crime and knowledge that a crime is being committed are not sufficient to establish the defendant's guilt. Mere association with conspirators or those involved in a criminal enterprise is insufficient to prove defendant's participation or membership in a conspiracy.

R. 145. The jury clearly understood its obligation that it had to find Mr. Diaz guilty of the conspiracy beyond a reasonable doubt. The instructions as a whole allowed the jury to convict Mr. Diaz *only* if the jurors believed that he was knowingly involved in the criminal enterprise.

The district court correctly permitted Mr. Diaz to be prosecuted on the firearm charge under 18 U.S.C. § 924(c)(1). The use of the ostrich instruction was not reversible error. Accordingly, we affirm the judgment of the district court.

AFFIRMED.