UNITED STATES of America, Plaintiff,

v.

Brian AHERN, Defendant.

No. IP 90–91–CR.

United States District Court,
S.D. Indiana,
Indianapolis Division.

March 5, 1991.

See also 761 F.Supp. 1368.

Christina McKee, Office of the U.S. Atty., Indianapolis, Ind., for Government.

James H. Voyles, Dennis E. Zahn, Ober, Symmes, Cardwell, Voyles & Zahn, Indianapolis, Ind., for defendant Brian Ahern.

## CONDITIONAL ORDER FOR NEW TRIAL

TINDER, District Judge.

After a jury verdict of guilty this court granted defendant, Brian Ahern's motion for acquittal. Subsequently, Ahern moved for a conditional order for a new trial and the United States filed its response to that motion. Pursuant to Federal Rule of Criminal Procedure 29(d) this court is required to "determine whether [the defendant's] motion should be granted if the judgment of acquittal is thereafter vacated or reversed, [and to] specify ... the grounds for such determination."

I. *Sufficiency of the evidence*

Federal Rule of Criminal Procedure 33 specifies that this court is to "grant a new trial if required in the interest of justice." This provision has been interpreted to mean that a trial court may grant a new trial where "the court reaches the conclu-

sion that the verdict is contrary to the weight of the evidence and that a miscarriage of justice may have resulted." 3C. WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 553 at 246 (1986) (hereinafter "FEDERAL PRACTICE"). In this court's entry on Ahern's motion for acquittal this court spent over thirty pages analyzing why the government's proof was insufficient to support Ahern's conviction. Obviously, this court has come to the conclusion that the jury's verdict was against the weight of the evidence for the reasons stated in this court's prior entry.

This court will not now recount the entirety of its analysis and findings from that prior entry except to reiterate the conclusion (1) that the government presented no evidence from which a jury could conclude beyond a reasonable doubt that Ahern knowingly made false statements and (2) that there was not adequate evidence upon which to base a conclusion that Ahern knew that the documents he signed would be submitted to the Department of Housing and Urban Development (HUD) or any other federal entity. In reaching this conclusion this court was required to view the evidence in the light most favorable to the government. *United States v. Beck*, 615 F.2d 441 (7th Cir.1980).

On a defendant's motion for a new trial, however, "the power of [a] court is much broader." FEDERAL PRACTICE § 553 at 245. A district court "may weigh the evidence and consider the credibility of witnesses." *Id.* at 245–46. This court is aware, however, that it should only exercise this authority to grant a new trial "sparingly and with caution, doing so only in those really exceptional cases." *United States v. Ludwig*, 897 F.2d 875, 883 (7th Cir.1990) (*quoting United States v. Martinez*, 763 F.2d 1297, 1312–13 (11th Cir. 1985) (quotation marks omitted).

■ At trial the government focused its case largely on the circumstances of the January 13, 1988, real estate closing at which Mr. Ahern signed the documents on which the substantive fraud counts were based. The government called four witnesses who attended that closing and each

of those witnesses testified that they did not see Mr. Ahern reading any of the documents on which the substantive fraud counts are based and that there was not time for him to have read those documents at that closing. Moreover, the government introduced no evidence suggesting that Mr. Ahern read or had the opportunity to read those documents prior to the January 13, 1988, meeting.

This court gives particular weight to the testimony of Ms. Kim Patterson Curry who apparently never had a personal friendship with Mr. Ahern and who had no apparent motive to testify falsely. Ms. Curry testified that the participants at the meeting were told to sign quickly and pass the documents on and that there was not time to read the documents. Indeed, Ms. Curry, who was not indicted, testified that she signed many of the documents without reading them in reliance on the assurances of Barbara Pumphrey, the representative of the mortgage company.

Each of the witnesses' testimony, without exception, was favorable to Ahern's case. Thus, this court has analyzed whether this testimony could be rightfully discredited by the jury. This court concludes that the jury should have given considerable weight to the testimony of each of the government's witnesses, and particularly Ms. Curry, that Brian Ahern did not read the documents he signed.

The critical question that the jury should have reached in this case was whether Brian Ahern knew that the documents he signed were false and whether he knew that those documents were to go to HUD. There was no testimony that Ahern read the documents, that he was told that the documents would be used to secure a loan or that those documents contained false statements. Thus, in the face of strong evidence to the contrary, the government asked the jury to conclude that Ahern read the documents or that he should have known from the circumstances of the transaction that something fishy was going on.

The government presented no evidence, however, from which the jury could infer that Mr. Ahern read the documents or was

suspicious about the content of those documents. The testimony was that Ahern did not read the documents. Indeed, the testimony indicated that there would not have been time for the average individual to have read those documents. Moreover, there was no evidence that Ahern was ever suspicious concerning the circumstances of the transaction.

This court concedes that some individual might have been suspicious under the circumstances. There was no evidence, however, that Mr. Ahern was. The government was required to prove the guilt of Brian Ahern and could not rest its case on an inference that some person, even a reasonable one, would have been suspicious. Brian Ahern cannot be convicted for thinking unreasonably, provided he did not possess criminal knowledge, as criminal knowledge was an element of the crime with which he was charged.

After viewing the evidence at trial, this court is left with the distinct and firm impression that the jury convicted Mr. Ahern against the clear weight of the evidence. Accordingly, for this reason this court would GRANT Mr. Ahern's motion for a new trial.

## II. *Ostrich Instruction*

■ The defendant has moved for a new trial on the ground that this court improperly gave an instruction which permitted the jury to find guilty knowledge "from a combination of suspicion and indifference to the truth." This court's "ostrich" instruction tracked the language of *United States v. Ramsey*, 785 F.2d 184, 190 (7th Cir.1986), *cert. denied*, 476 U.S. 1186, 106 S.Ct. 2924, 91 L.Ed.2d 552 (1986), wherein the Seventh Circuit approved of the following instruction:

> You may infer knowledge from a combination of suspicion and indifference to the truth. If you find that a person had a strong suspicion that things were not as they seemed or that someone had withheld some important facts, yet shut his eyes for fear of what he would learn, you may conclude that he acted knowingly, as I have used that word.

The defendant properly raised an objection to this instruction at trial and that objection was overruled by this court. After further review, however, this court has concluded that it acted hastily in overruling defendant's objection to the ostrich instruction.

The ostrich instruction should not have been given because there was absolutely no evidence from which the jury could conclude that Brian Ahern ever evidenced a "strong suspicion" that he was signing false documents or that those documents would be submitted to a federal agency. Moreover, there was no evidence from which the jury could infer that Brian Ahern suspected that important facts had been withheld from him or that he ignored the circumstances for fear of what he might learn. "The danger in giving the instruction where there is evidence of direct knowledge but no evidence of avoidance of knowledge is that the jury could still convict a defendant who merely should have known about the criminal venture." *United States v. Diaz*, 864 F.2d 544, 551 (7th Cir.1988), *cert. denied*, 490 U.S. 1070, 109 S.Ct. 2075, 104 L.Ed.2d 639 (1989), (*quoting United States v. Manriquez Arbizo*, 833 F.2d 244, 249 (10th Cir.1987)).

In this case, where there was no evidence of Brian Ahern's direct knowledge, the danger was the same. The jury was instructed that they could "convict a defendant who merely should have known about the criminal venture." *Diaz*, 864 F.2d at 551.

There was no evidence in this case from which the jury could conclude that Mr. Ahern sought to avoid knowledge about the criminal venture. To be sure, the evidence indicated that Mr. Ahern was not "curious as a cat" about the documents he was signing. However, there was strong evidence that Mr. Ahern was acting out of a deep trust of his friend, William Miller.

The evidence relied upon by the government to support its theory that Mr. Ahern was suspicious is deficient. Indeed, all the government attempts to do is recount that Mr. Ahern earned $70,000 per year at a responsible job, observe that he had previously bought land on contract from Frank

Jackson and recount that Ahern had been involved in a previous closing on the Fall Creek Properties. *See* United States' Response to Motion for New Trial (filed February 14, 1991) at 3–4. Significantly, there was no testimony that any of the contracts Mr. Ahern entered into with Frank Jackson were submitted to HUD nor was there any testimony about the circumstances of these transactions. In fact, there was no testimony shedding significant light on any closing at which Mr. Ahern signed documents except for the January 13, 1988, closing about which the testimony was uncontroverted that Mr. Ahern signed without reading the documents.

■ This evidence is far afield from the evidence typically encountered in cases where the ostrich instruction is given. *See, e.g., United States v. Kehm,* 799 F.2d 354, 362 (7th Cir.1986) (testimony that defendant left meeting where the subject of smuggling came up with the comment "that he didn't want to hear about it"). An ostrich instruction is only permissible where "there are facts and evidence that support an inference of *deliberate* ignorance." *United States v. Talkington,* 875 F.2d 591, 596 (7th Cir.1989) (*quoting United States v. White,* 794 F.2d 367, 371 (8th Cir.1986)) (emphasis added). There was no such evidence here.

From the government's evidence the jury was left to deduce that Mr. Ahern was an intelligent individual who should have inquired further. However, this approach asks the fact-finder to judge Mr. Ahern against the standard of what he "should have" known, and this the government may not do. It "takes a fairly large amount of knowledge to prompt further investigation for the purpose of [an ostrich] instruction; to permit an inference of knowledge from just a little suspicion is to relieve the prosecution of its burden of showing every element of the case beyond a reasonable doubt." *Ramsey,* 785 F.2d at 190.

This court concludes that its decision to send the ostrich instruction to the jury deprived the defendant of a fair trial by relieving the government of its burden of proving individualized guilty knowledge.

Accordingly, this court would GRANT the defendant's motion for a new trial on this ground as well.

### III. *Motion for mistrial*

■ Finally, this court would GRANT a new trial on the grounds that the government attorney's reference in her closing argument to what she characterized as what the defendant Ahern "said" abridged Ahern's right not to testify and prevented him from obtaining a fair trial.

In closing argument the government attorney offered:

> Now, ladies and gentlemen, if you allow Brian Ahern to stand before you and say, "I did everything that led up to these transactions, yes, that is my signature, but no, I'm not responsible for that signature," then I submit you are allowing him to commit a crime.

Mr. Ahern did not testify in this case, a fact the attorney's remarks unfairly highlighted moments before this case was given to the jury for its deliberations. The prosecutor's comments were immediately objected to, and a colloquy with counsel outside the hearing of the jury emphasized the prejudicial import of the statement. A limiting instruction, however, would only have further emphasized the fact that Ahern did not take the stand, and the defendant's counsel urged that the prosecutor's statement warranted a mistrial. In fact, the prosecutor had made three previous references in her argument to the defendant Ahern "saying" things in his defense.

This court did not grant a mistrial at the moment the prosecutor's comment was made, however, I am now convinced that defendant's right to a fair and constitutional adjudication was abridged by the remark. The language of the prosecutor's comment "was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *United States v. Di-Caro,* 852 F.2d 259, 263 (7th Cir.1988) (*quoting United States v. Lyon,* 397 F.2d 505, 509 (7th Cir.1968), *cert. denied,* 393 U.S. 846, 89 S.Ct. 131, 21 L.Ed.2d 117 (1968)). The prosecutor's comment re-

ferred directly to the defendant and what the jury should let him "say." The defendant, however, exercised his constitutional privilege not to "say" anything, a choice the prosecutor's comment unfairly emphasized.

As should be clear from the court's discussion of the evidence in the entry on the motion for judgment of acquittal and in section I of this entry, the evidence did not support a verdict of guilty. In many cases and contexts, the argument referred to above might not be an appropriate basis for a mistrial. However, in the context of this case, and in the setting of the final arguments here, the court is concerned that this line of argument may have unfairly tipped the scales in the minds of the jurors. Based on the evidence in the record of this case, the court can find no other basis for the decision of the jury.

This court hastens to add that there is no doubt that the comment was unintentional. The prosecutor who made the remark is skilled and experienced and has conducted herself with integrity at all times when she has advocated before this court. Nevertheless, this court does not believe that the prosecutor's good intent mitigates the unfair effect of her misstatements. Defendant Ahern had no burden of proof, and the government's argument should not have implied that Ahern should have made some explanation of his conduct.

Thus, the court would conditionally grant a new trial for each of the foregoing reasons. The combination of all three of these bases for a new trial also compels that result.

ALL OF WHICH IS ORDERED.