21 F.3d 431
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 UNITED STATES of America, Plaintiff/Appellee,
v.
Brett CRONKHITE, Defendant/Appellant.
 No. 93-2361.
 United States Court of Appeals, Seventh Circuit.
 Argued March 2, 1994.
Decided April 1, 1994.
 
 Before POSNER, Chief Judge, and CUMMINGS and MANION, Circuit Judges.
 
 ORDER
 
 1
 Brett Cronkhite was convicted by a jury of attempting to pass a counterfeit obligation in violation of 18 U.S.C. Sec. 472. He was sentenced to four months of home detention, three years of probation, and 100 hours of community service. On appeal he objects to the district court's admission of certain physical evidence at trial, arguing that the evidence was not relevant under Rule 401 of the Federal Rules of Evidence, or alternatively that it was prejudicial under Rule 403 of the Federal Rules of Evidence.[1]
 
 I. Facts
 
 2
 Gary and Linda Mynhier, the parents-in-law of Brett Cronkhite, owned a truck dispatching business, and from June until October 1991, made counterfeit United States currency. During a portion of that time, Brett Cronkhite and his wife Dena lived with the Mynhiers. After the Cronkhites had moved out of the Mynhier home, Brett Cronkhite visited there and discovered in the dresser drawer of Faith Kimble, another of the Mynhiers' daughters, a stack of $50 bills. He took one bill. Cronkhite testified that he thought it was unusual for Kimble, then unemployed, to have so much money. He kept the bill separate from his other money, but approximately one week later, on September 16, 1991, Brett Cronkhite attempted to pass the counterfeit $50 federal reserve note at the Key Market in Lake Station, Indiana. When the cashier told Cronkhite that a supervisor would have to inspect the bill, Cronkhite ran from the store.
 
 
 3
 On October 11, 1991, Secret Service Agent Bereda informed the Mynhiers that their daughter Faith Kimble had been taken into custody. Kimble had five hundred dollars of counterfeit money in her purse at the time. Linda Mynhier consented to the search of her purse and accompanied Agent Bereda to the Lake Station Police Department. Gary Mynhier testified that after Kimble was taken into custody he gave a box of bond paper and several counterfeit bills to Brett and Dena Cronkhite and told them to "get rid of it." Conversely, according to Brett Cronkhite, he found the box of paper and bills in the trunk of his car sometime after he had attempted to pass the counterfeit money. His wife told him that her mother asked them to keep it for her. Cronkhite stated that he threw the box and bills into a dumpster by a local convenience store. Frank Beard found a box of paper and two $50 bills in a dumpster by the convenience store and attempted to pass the bills. At the sentencing hearing, the court was not able to determine the circumstances surrounding how Cronkhite acquired the box and bills, and therefore decided that "it will not consider it any way, shape or form."
 
 
 4
 Later, Agent Bereda accompanied Linda and Faith to the Mynhier home and with Linda's consent, searched the residence and Linda's car and discovered counterfeit money. The money was found in Faith's former bedroom, in Linda and Gary Mynhier's bedroom, and in the trunk of Linda's car. The watermark on the money matched that of the bond paper found in the dumpster and the counterfeit bills in Kimble's purse. Additionally, the bills had the same serial number. Sometime thereafter, Cronkhite was arrested and charged with attempting to pass a counterfeit obligation, 18 U.S.C. Sec. 472, and being an accessory after the fact to the Mynhiers in order to hinder or prevent their apprehension, trial, and punishment for having committed the crime of conspiracy to manufacture, possess, and distribute counterfeit currency, 18 U.S.C. Sec. 3.
 
 II. Discussion
 
 5
 Cronkhite claims that the district court erred in admitting into evidence: 1) the counterfeit bills taken from Faith Kimble's purse; 2) the counterfeit bills found in Faith Kimble's former bedroom; 3) the counterfeit bills found in Gary and Linda Mynhier's bedroom; and 4) the uncut counterfeit bills found in the trunk of Linda Mynhier's car. He argues that this evidence was not relevant, and even if it were, it was prejudicial. Fed.R.Evid. 401, 403. The district court has broad discretion to assess the relevancy of proffered evidence. United States v. Garcia, 986 F.2d 1135, 1139 (7th Cir.1993); United States v. West, 670 F.2d 675, 682 (7th Cir.1982). This court will reverse the district court only for an abuse of discretion. United States v. Ahangaran, 998 F.2d 521, 524 (7th Cir.1993); United States v. Hughes, 970 F.2d 227, 232 (7th Cir.1992).
 
 
 6
 Rule 401 of the Federal Rules of Evidence states that:
 
 
 7
 "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.
 
 
 8
 Cronkhite contends that the evidence admitted at trial does not prove the elements of either crime with which he was charged.
 
 
 9
 The elements of passing a counterfeit bill with intent to defraud are: 1) possession of counterfeit money; 2) knowledge, at the time of possession, that the money is counterfeit; 3) possession with intent to defraud. 18 U.S.C. Sec. 472; United States v. Talkington, 875 F.2d 591, 595 n. 2 (7th Cir.1989) (citing United States v. Rodriguez, 761 F.2d 1339 (9th Cir.1985)). As for count two, the elements of the crime of being an accessory after the fact are: 1) the crime of conspiracy to manufacture, possess and distribute counterfeit notes with intent to defraud had been committed by persons other than the defendant; 2) the defendant knew that this crime had been committed and who committed it; and 3) the defendant intentionally assisted the perpetrators in order to hinder or prevent their apprehension, trial or punishment. 18 U.S.C. Sec. 3; see United States v. Lepanto, 817 F.2d 1463, 1467 (10th Cir.1987). On the accessory charge, Cronkhite argues that the evidence had no bearing on the last two elements, and contends that the evidence would be relevant to the first element as to whether a crime had been committed by the Mynhiers, but that both Gary and Linda Mynhier had admitted their crime. Cronkhite further asserts that he had no knowledge of the existence of any of the exhibits, and therefore they should not have been admitted.
 
 
 10
 The counterfeit bills admitted into evidence were relevant to the charges against Cronkhite on two grounds. First, they were relevant to Cronkhite's knowledge that the $50 bill he attempted to pass was counterfeit. Cronkhite testified that he was not sure whether the bill was counterfeit or not. The bills from Kimble's room were relevant to the source of the bill Cronkhite attempted to pass, and to his suspicions that Kimble would have so much money. The other bills were relevant because he lived at the Mynhier residence during part of the time the Mynhiers were engaged in counterfeiting, which would tend to make it more probable that he was aware of their activities. Six adults and five children lived in the Mynhier's two bedroom home where the counterfeit money was kept and sometimes manufactured.
 
 
 11
 Second, the counterfeit bills were relevant to the charge that Cronkhite was an accessory after the fact, aiding the Mynhiers in the commission of a conspiracy to manufacture, possess and distribute counterfeit money. Gary Mynhier's testimony that he gave Cronkhite evidence of his counterfeiting operation to dispose of is corroborated by the exhibits. The box he says he gave to Cronkhite was found in a dumpster, and the water mark on that counterfeit currency matched the money found in Kimble's bedroom and in Linda's car. Also the money from the dumpster, the money from Kimble's purse, and the money from the Mynhier's bedroom had identical serial numbers. Although the jury acquitted Cronkhite of the accessory charge, the evidence admitted was relevant to that charge. It tended to prove that the money came from the same source and it supported Gary Mynhier's testimony that Cronkhite disposed of the box knowing it was evidence against the Mynhiers.
 
 
 12
 The government had to prove that Cronkhite knew the crime had been committed and who committed it. The evidence of counterfeit money admitted at trial tended to prove that Cronkhite knew the Mynhiers engaged in the criminal activity, supporting the assertion that Cronkhite knew the money was counterfeit. Further, that evidence supports an assertion that Cronkhite knew that the $50 was counterfeit, knowledge being an element of the first charge.[2]
 
 
 13
 In the alternative, Cronkhite argues that this evidence was unduly prejudicial under Federal Rule of Evidence 403, which provides:
 
 
 14
 Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.
 
 
 15
 The district court's balancing of probative value and unfair prejudice is entitled to great deference. See United States v. York, 933 F.2d 1343, 1352 (7th Cir.), cert. denied, 112 S.Ct. 321 (1991); see also United States v. Khorrami, 895 F.2d 1186, 1194 (7th Cir.) (in reviewing the admissibility of relevant, potentially prejudicial evidence, the court must view the evidence in the light most favorable to proponent, maximizing the probative and minimizing the prejudicial), cert. denied, 498 U.S. 986 (1990). Cronkhite claims, without citation to the record, that the balancing test required by Rule 403 was never performed. To prevail Cronkhite must prove the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. The evidence established elements that the government was required to prove in order to convict Cronkhite and therefore was probative. While most such evidence is prejudicial, Cronkhite has not shown undue prejudice under Rule 403. Thus, the record does not support Cronkhite's claim that the district court abused its discretion in admitting the evidence.
 
 
 16
 AFFIRMED.
 
 
 
 [1]
 In his brief on appeal Cronkhite contended that the district court erred in failing to reduce his offense level based upon: 1) his acceptance of responsibility, and 2) his minimal role in the offense. U.S.S.G. Secs. 3E1.1, 3B1.2. At oral argument counsel waived these issues as moot because Cronkhite had completed serving his four-month sentence of home detention
 
 
 [2]
 The government asserts that another element it had to prove in the accessory count was that the underlying crime in fact was committed by the Mynhiers. In addition to the testimony presented by Gary Mynhier, it argues the evidence supports a counterfeiting enterprise run by the Mynhiers. While this is true, the Mynhiers already had pleaded guilty to that charge before trial, and therefore use of the evidence to prove that element was duplicative and unnecessary