UNITED STATES of America,
Plaintiff–Appellee,

v.

Zeb Lloyd CUMMINGS,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Delton CUMMINGS,
Defendant–Appellant.

Nos. 90–5505, 90–5513.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 8, 1991.

Decided June 20, 1991.

William Lee Davis, III, Lumberton, N.C., Elizabeth Manton, Asst. Federal Public Defender, Raleigh, N.C., argued (William E. Martin, Federal Public Defender, Raleigh, N.C., on brief), for defendants-appellants.

Christine Witcover Dean, Asst. U.S. Atty., argued (Margaret Person Currin, U.S. Atty., on brief), Raleigh, N.C., for plaintiff-appellee.

Before ERVIN, Chief Judge, NIEMEYER, Circuit Judge, and SPENCER, District Judge for the Eastern District of Virginia, sitting by designation.

SPENCER, District Judge:

Zeb and Delton Cummings appeal their convictions for possession of firearms during and in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c). We affirm.

I

Most relevant facts are undisputed and are summarized below.

Cynthia Young was a paid informant for the Robeson County Sheriff's Department in North Carolina. In that capacity, she first contacted Zeb Cummings in June 1989 about buying some cocaine. She arranged to buy two ounces from Zeb on June 16, 1989. The Sheriff's Department gave her $2,200 in marked bills that day to make the purchase.

Young met Zeb and others at the home of Terry Locklear, a friend who had arranged for Young and Zeb to meet. Zeb called his Uncle Delton by phone in Young's presence. Zeb then told Young that he could provide one ounce of cocaine for her.

Four individuals, including Zeb and Young, drove in two cars to the trailer home of a Shirley Hunt; Zeb's uncle Delton was living there at the time, too. Zeb went inside the trailer and returned with a small quantity of cocaine for everyone to sample. Young then gave Zeb $1,100 and agreed to purchase an ounce.

Zeb went back to the trailer. He returned with the cocaine and delivered it to Young, who was sitting inside one of the cars. Zeb then drove away in the other car.

Detectives approached the car that remained and arrested the occupants. They then surrounded the trailer.

A detective first knocked and announced the presence of the law. Almost simultaneously, Zeb's uncle Delton Cummings stepped out the back door. With his left hand, he threw to the ground a small clear bag of white powder later identified as cocaine. His right hand held a large revolver, which Detective Mark Locklear[1] knocked to the ground with his flashlight. Locklear read Delton his Miranda rights and arrested him.

Locklear then asked Delton whether there were any more drugs around. Delton initially only said to "leave the girls out of this," apparently referring to Shirley Hunt and her daughter, who were in the trailer. Delton then said there were more

drugs, and Locklear told him to take them to it.

Delton took Locklear to a nearby spot in the woods, where there was a small bag containing more cocaine. On further questioning, Delton also directed the officers to another handgun in his car.

Detectives recovered the marked purchase money from the trailer. They arrested Zeb later that night. He gave a statement to county authorities confirming substantially the same sequence of events described above, up until his departure from the scene. About two months later, he made a similar statement to federal BATF Agent Wesley Woodham.

Defendants were jointly tried and convicted in April 1990 for violations of 21 U.S.C. §§ 841 and 846 (conspiracy to distribute and distribution of cocaine), and 18 U.S.C. § 924(c)(1) (possession of a handgun during and in relation to a drug trafficking offense). Delton was also convicted for violating 18 U.S.C. § 922(g) (possession of firearm by a convicted felon), which he does not appeal.

## II

Count three of the relevant indictment charged both appellants with violating 18 U.S.C. § 924(c)(1), which states:

> Whoever, *during and in relation to any crime of violence or drug trafficking crime* (including a crime of violence or drug trafficking crime which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which he may be prosecuted in a court of the United States, *uses or carries a firearm*, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years.... [Emphasis added.]

Delton Cummings argues that the evidence was insufficient to show that he committed the acts emphasized above. This argument is without merit.

---

**1.** Locklear is the middle name of Young, the last name of her contact to Zeb, and the last name of this detective. None of them appear to be related.

"[E]vidence of weapons found with a significant quantity of illegal drugs and drug distributing paraphernalia" presents a jury question on a § 924(c)(1) charge. *United States v. Poole*, 878 F.2d 1389, 1393–94 (11th Cir.1989) (discussing numerous cases); *accord United States v. Meggett*, 875 F.2d 24, 29 (2d Cir.) (cases unanimous in holding that mere weapon possession enough if it is "an integral part of the predicate offense and facilitates the commission of that offense"), *cert. denied*, —— U.S. ——, 110 S.Ct. 166, 107 L.Ed.2d 123 (1989); *see also United States v. Brockington*, 849 F.2d 872, 876 (4th Cir.1988) (possession of weapons, and drugs with intent to distribute plus "common sense recognition" that drug dealing is a dangerous and violent enterprise "more than supports an inference" that defendant carried weapon to facilitate business). *Compare United States v. Phelps*, 877 F.2d 28, 30 (9th Cir. 1989) (no violation where defendant carried firearm "solely to exchange it" in barter transaction for drugs).

 Viewed in the light most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), the evidence at trial clearly supported conviction.

Delton was arrested just after a transaction involving an ounce of cocaine. He was arrested in actual or constructive possession of over an ounce more. *See* Joint App. ("J.A.") 334–35, 370–75.

Delton reached for a firearm tucked in the back of his trousers as he exited Shirley Hunt's trailer. Detective Locklear feared that Delton was "coming up with the gun at me," and knocked the weapon out of his hand. *Id.* at 328. The weapon was a loaded .357 magnum revolver. *Id.* at 331–32. Delton also led Detective Locklear to his nearby car, where he kept a loaded .25 caliber semi-automatic handgun under the front seat. *Id.* at 335–37. Shirley Hunt also testified that Delton had a gun with him "[m]ost of the time," usually in the back of his pants. *Id.* at 298.

Delton's argument rests largely on a particular characterization of events surrounding his arrest. *See* Brief of Appellants at 9–10. The evidence was sufficient to let the jury come to a different conclusion.

Delton also relies on the case *United States v. Feliz–Cordero*, 859 F.2d 250 (2d Cir.1988). There, the Second Circuit discussed only two cases and the scant legislative history of § 924(c)(1). That analysis led it to conclude that a § 924(c) conviction requires:

> i) Proof of a transaction in which the circumstances surrounding the presence of a firearm suggest that the possessor of the firearm intended to have it available for possible use during the transaction; or ii) The circumstances surrounding the presence of a firearm where drug transactions take place suggest that it was strategically located so as to be quickly and easily available for use during such a transaction.

*Feliz–Cordero*, 859 F.2d at 254. The court found the evidence insufficient to sustain convictions of appellants.

The case is readily distinguishable. The single weapon there was found inside a bedroom dresser drawer of the apartment where one defendant lived. Police found it during a search of the defendants' apartments conducted five days after the drug transactions which gave rise to the search warrants. *See id.* at 251–52.

Here, abundant evidence supports the finding that Delton Cummings routinely carried a weapon on his person, and kept one in his car. It also supports finding that he brandished a gun while attempting to escape out the back door of Hunt's trailer, and that he had the weapon while in possession of drugs with the intent to distribute. That is clearly enough to support a § 924(c)(1) conviction.

### III

Zeb Cummings argues that even if Delton may be lawfully convicted on the § 924(c)(1) count, he cannot be. He argues that his conspiracy with Delton ended before Delton was identified as possessing a gun. He also argues that the conviction cannot stand, because there was no evidence that he knew about Delton's gun,

and because Delton's acts concerning the gun were not in furtherance of the conspiracy. *See* J.A. 404–05; Brief of Appellants at 12.

This argument has more merit, but contradicts the conspiracy doctrine as adopted in this circuit.

■ The Fourth Circuit recognizes the full breadth of the conspiracy doctrine described in *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). *See, e.g., United States v. Chorman,* 910 F.2d 102, 110–13 (4th Cir.1990). That doctrine makes conspirators liable for all reasonably foreseeable acts of their co-conspirators done in furtherance of the conspiracy. *Pinkerton,* 328 U.S. at 646–47, 66 S.Ct. at 1183–84; *Chorman,* 910 F.2d at 111.

Courts in at least three circuits appear to apply this rule to § 924(c)(1), to permit convictions based on circumstances like those of this case. *See United States v. Gonzalez,* 918 F.2d 1129, 1135–36 (3d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1015, 112 L.Ed.2d 1097 (1991); *United States v. Johnson,* 886 F.2d 1120, 1123 (9th Cir. 1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1830, 108 L.Ed.2d 959 (1990); *United States v. Diaz,* 864 F.2d 544, 548–49 (7th Cir.1988), *cert. denied,* 490 U.S. 1070, 109 S.Ct. 2075, 104 L.Ed.2d 639 (1989); *United States v. Brant,* 448 F.Supp. 781, 782 (W.D.Pa.1978); *cf. United States v. Gironda,* 758 F.2d 1201, 1212 (7th Cir.) (involving former § 924(c)(2)), *cert. denied,* 474 U.S. 1004, 106 S.Ct. 523, 88 L.Ed.2d 456 (1985). *But cf. United States v. Nelson,* 733 F.2d 364, 371 (5th Cir.1984) (dictum indicating that defendant's conviction under former § 924(c)(2) for acts of co-defendant must be supported by evidence that defendant knew the co-defendant was carrying a firearm while carrying out his directions), *cert. denied,* 469 U.S. 937, 105 S.Ct. 341, 83 L.Ed.2d 276 (1984).

The rationale of *Diaz* is instructive. There, appellant Diaz was convicted of the exact crimes involved here. He appealed his § 924(c)(1) conviction. *Diaz,* 864 F.2d at 545.

■ The government did not show at trial that Diaz was armed. Instead, it argued that a co-conspirator's weapon possession could be imputed to Diaz "because of their joint membership in the conspiracy." *Id.* at 547. Diaz of course contested this interpretation.

> The Seventh Circuit began by noting that: the plain wording of [§ 924(c)(1)] permits a defendant to be convicted of carrying a firearm in relation to the "drug trafficking crime" of conspiracy to possess and distribute cocaine. Because section 924 defines a drug trafficking crime as "any felony violation of Federal law involving distribution," the plain language of the statute includes the federal violation of conspiracy to distribute.

*Id.* at 547–48; *see also* 18 U.S.C. § 924(c)(2) (new wording but same coverage of drug conspiracy as definition in force at time of *Diaz*). The court added that common sense supported this interpretation. There was no indication that Congress intended to punish gun use in other drug trafficking activities while exempting conspiracy, "a situation that is traditionally considered more dangerous." *Diaz,* 864 F.2d at 548.

The court squarely held that a co-conspirator's § 924(c)(1) violation "may be imputed to other members of the conspiracy, including Mr. Diaz," under the *Pinkerton* conspiracy doctrine:

> In *Pinkerton,* the Supreme Court held that a party to a continuing conspiracy may be responsible "when the substantive offense is committed by one of the conspirators in furtherance of the [conspiracy]," *even though he does not participate in the substantive offense or have any knowledge of it.*

*Id.* (citing *Pinkerton,* 328 U.S. at 647), 66 S.Ct. at 1184) (emphasis added).

The court went on to indicate that this doctrine applied fully in the Seventh Circuit, and permitted Diaz's conviction as long as the evidence supported three conclusions: 1) the weapons offense was committed; 2) the co-conspirator's weapons offense was committed pursuant to and in furtherance of the conspiracy; and 3) Diaz was a member of that conspiracy at the

time the weapons offense was committed. *See id.* at 549 (discussing *Gironda*, 758 F.2d at 1211).

The court also squarely addressed one of the arguments Zeb Cummings raises here:

> A conspirator may be found guilty of a substantive crime *unless* that crime "could not be reasonably foreseen as a necessary or natural consequence of the lawful agreement." However, the illegal drug industry is, to put it mildly, a dangerous, violent business. When an individual conspires to take part in a street transaction involving a kilogram of cocaine worth $39,000, it certainly is quite reasonable to assume that a weapon of some kind would be carried.

*Id.* (emphasis in original, citation to *Pinkerton* omitted);[2] *accord Gironda*, 758 F.2d at 1212.

Zeb Cummings attempts to distinguish *Diaz*, but he acknowledges that there was "no evidence that Diaz was armed or knew about the weapon although he was present" during the transaction where the gun-toting co-conspirator was arrested. Brief of Appellant at 14; *see Diaz*, 864 F.2d at 546.

*Diaz* offers a well-reasoned basis for rejecting the second and third points of Zeb's arguments about the § 924(c)(1) conviction. *See also Chorman*, 910 F.2d at 111 & n. 15 (approving of jury instructions permitting guilt of defendant for co-conspirator's actions even though latter "may have occurred in the absence and without the knowledge of the defendant"); *cf. Brockington*, 849 F.2d at 876 (approving of "common sense recognition" that drug dealing is dangerous and violent enterprise); *Brant*, 448 F.Supp. at 782 (firearms possession increases probability of transac-

tion's success "and, thus, is an act in furtherance of the conspiracy.").

The indictment itself rebuts the contention that the conspiracy had ended when evidence of guns arose.

Count 1 of the indictment charges that Delton and Zeb:

> did knowingly and willfully conspire, confererate and agree with each other and ... [others] to violate Title 21, United States Code, Section 841(A)(1), that is, *to possess with the intent to distribute and to distribute cocaine*, ... in violation of Title 21, Unites States Code, Section 846.

J.A. 10 (emphasis added). Possession was clearly considered "a part and object" of the conspiracy. *Meggett*, 875 F.2d at 29. Delton Cummings' use of a firearm in connection with such possession is a proper basis for convicting both Delton and Zeb on the firearm count, because Delton used the weapon while still in possession of a large quantity of drugs. *See id.* *See generally United States v. Walker*, 796 F.2d 43, 49 (4th Cir.1986) (conspiracy deemed to continue unless defendant meets burden of showing it terminated or he withdrew from it).

## IV

Zeb Cummings contends that the trial court committed reversible error when it denied his motion to suppress evidence of statements he made to Bureau of Alcohol, Tobacco and Firearms ("BATF") Agent Earl Woodham on November 20, 1989.

Zeb insists that there is a *per se* rule against self-incrimination and waiver of counsel after a defendant has invoked the right to counsel, unless the attorney is present. Brief of Appellants at 19.

---

**2.** A Third Circuit panel viewed *Diaz* as based on an unnecessary "presumption that the carrying of a firearm in a drug deal is foreseeable." *Gonzalez*, 918 F.2d at 1136 (dictum). That view is not entirely justified; the panel also acknowledged that the *Pinkerton* foreseeability concepts are closely related to the concept of presumptions. *Id.* at 1136 n. 5.

The *Gonzalez* court found sufficient evidence to convict appellants under § 924(c)(1) for weapons held by their co-conspirator, however. It noted the placement of the co-conspirator's weapon (tucked in the front of his waistband), his proximity to the appealing defendants, and other factors. *See id.* at 1135–36.

That analysis also suffices here. Zeb was arrested for his participation in a conspiracy to distribute a large quantity of drugs. His uncle Delton regularly carried a weapon. Delton was brandishing a large handgun when arrested. He drew the gun from the back of his pants, while exiting from a trailer which Zeb had visited twice only minutes earlier.

That is false. Every case he relies upon clearly involved statements *elicited* by authorities. *E.g., Michigan v. Jackson,* 475 U.S. 625, 635, 106 S.Ct. 1404, 1410–11, 89 L.Ed.2d 631 (1986) (written waiver "insufficient to justify *police-initiated* interrogations after the request for counsel"); *Massiah v. United States,* 377 U.S. 201, 203, 84 S.Ct. 1199, 1201, 12 L.Ed.2d 246 (1964) (violation of sixth amendment to use statements *"deliberately elicited* from [defendant] after he had been indicted and in the absence of his counsel.").

Zeb does cite a case which describes the applicable law:

> "[W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. [Such accused] is not subject to further interrogation by the authorities until counsel has been made available to him, *unless [he] himself initiates further communication, exchanges, or conversations with the police."*

*Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981) (emphasis added); *accord McFadden v. Garraghty,* 820 F.2d 654 (4th Cir.1987); *see also Michigan v. Harvey,* 494 U.S. 344, 110 S.Ct. 1176, 1181, 108 L.Ed.2d 293 (1990) ("[N]othing in the Sixth Amendment prevents a suspect charged with a crime and represented by counsel from voluntarily choosing, on his own, to speak with police in the absence of an attorney.").

As stated in *Smith v. Illinois,* 469 U.S. 91, 95, 105 S.Ct. 490, 493, 83 L.Ed.2d 488 (1984):

> "[I]f the accused invoked his right to counsel, courts may admit his responses to further questioning only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked."

**3.** This does not adversely affect Zeb's fifth amendment rights. *See Arizona v. Roberson,*

A court's finding that defendant made such a voluntary waiver will be upheld unless clearly erroneous. *See, e.g., United States v. Wilson,* 895 F.2d 168, 171 (4th Cir.1990).

There is no disputing that Zeb was in state custody in Robeson County pending state charges. He had exercised his right to remain silent, and was appointed counsel to represent him in those state proceedings. J.A. 109–110.

As of November 20, 1990, federal authorities had not yet brought the indictment at issue here.[3] *See id.* and 12 (indictment filed November 28). Robeson County narcotics officer Burnis Lee Wilkins, Jr. testified that he spoke to Zeb in October:

> Mr. Cummings was requesting some help. I told him we had talked about taking the case to federal court and he said he wanted to talk to them. I saw Mr. Woodham later after that and told him about it. A week or so went by and he [Agent Woodham] still had not gone to the jail to see Mr. Cummings. I talked to Mr. Cummings again and he still wanted to talk to him. I told Mr. Woodham again while he was in our office and he went that afternoon.

*Id.* at 101.

■ Agent Woodham's testimony supported this. *See id.* at 109. He described going to the Robeson County jail on November 20 with another agent, and taking Zeb's statement at about 4:30 p.m. *Id.* at 109–11. He stated that he asked Zeb if he wanted to speak to him, "because that's the information I got." Zeb responded that he did. He also acknowledged that he had appointed counsel but indicated "that didn't matter to him." He then listened to and waived his Miranda rights, both orally and in writing. *Id.* at 114–15.

Zeb described the situation differently, when testifying at the trial court's hearing on his suppression motion:

> Q. Tell us what happened when he [Woodham] came to your cell.
> A. Well, they come in the cell and said somebody wants to see you. I said I wonder who that could be. I didn't know

486 U.S. 675, 108 S.Ct. 2093, 2100–01, 100 L.Ed.2d 704 (1988).

them. I knew they weren't the law from around there. We went upstairs and he said do you want to go home.

Q. Was anybody with him?

A. Another fellow was with him. I said yes, I want to go home. He said well, you need to make a statement. So I made a statement.

*Id.* at 146. Zeb admitted that he signed a rights waiver, told Woodham that he did not need a lawyer, and then made a statement. *Id.* at 146–47.

The trial court accepted the story as related by Locklear and Woodham, and denied Zeb's motion to suppress:

With regard to the second statement, the one given on the 21st [sic] of November 1989 to Agent Woodham of the ATF, the court finds that that interview was initiated by a request by the defendant Cummings made to Robeson County Deputy Sheriff Wilkens [sic] and communicated by Deputy Sheriff Wilkens to Agent Woodham and that before Agent Woodham talked to the defendant Zeb Cummings, by defendant's own admission, Agent Woodham asked him about the fact that he had private—that he had a lawyer and that he shouldn't be talking to him without his lawyer present and that Mr. Cummings said that didn't make any different, he wanted to talk to him. For that reason, the motion by the defendant Zeb Cummings to suppress that statement is also denied.

Supplemental J.A. 3.

The trial court's factual findings are supported by the record, and cannot be construed to be clearly erroneous. Those findings permit the use of the statements which Zeb argues should have been suppressed. *E.g., Murphy v. Holland,* 845 F.2d 83, 85 (4th Cir.), *cert. denied,* 488 U.S. 908, 109 S.Ct. 258, 102 L.Ed.2d 246 (1988).

Zeb briefly discusses the admissibility of a written memorandum of his statements, which Agent Woodham prepared and Zeb did not sign. Brief of Appellants at 20. That argument is meaningless, as the writ-

ten memorandum was not admitted into evidence. Agent Woodham only testified to what Zeb told him.[4] J.A. 384–85.

## V

Delton Cummings brandished a gun while slipping out of the back of a trailer after making a drug transaction. This is enough to support his conviction for violation of 18 U.S.C. § 924(c)(1).

The scope of § 924(c)(1) extends to cases where a co-defendant carries a weapon in a drug trafficking conspiracy. General conspiracy principles allowed the jury to find Zeb Cummings liable for his co-conspirator's violation of that statute.

Finally, the trial court was not clearly erroneous in finding that Zeb volunteered his statements to federal authorities.

For the reasons discussed above, the judgments are affirmed.

AFFIRMED.

---

**4.** Similar statements Zeb made to *state* authorities were also reduced to writing. The memorandum was received in evidence, and read to the jury. J.A. 248–51. The admission of those statements is not contested on appeal.