958 F.2d 369
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Luis CARVAJAL-CASTILLO, a/k/a Lewshing, a/k/a Luis Alberto
Carvajal-Castillo, a/k/a Lushing, a/k/a Lewis
Zosa, a/k/a John Doe, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Alphonso LEWIS, a/k/a John Doe, a/k/a Alfonso Lewis, a/k/a
Jackson, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Arturo Francisco BROWN, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Yezica Yalina VEJARANO, a/k/a Jessica, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jesus GARCIA, Defendant-Appellant.
 Nos. 91-5393, 91-5395, 91-5396, 91-5406, 91-5526.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 1, 1991.
Submitted Oct. 22, 1991.
Decided March 20, 1992.
 
 Appeals from the United States District Court for the Middle District of North Carolina, at Greensboro. Frank W. Bullock, Jr., District Judge. (CR-90-196-G)
 Argued: James W. Swindell, High Point, N.C., for appellant Vejarano; Lawrence J. Fine, Winston-Salem, N.C., for appellant Carvajal-Castillo; Susan Hayes, Greensboro, N.C., for appellant Garcia; James B. Craven, III, Durham, N.C., for appellant Brown; Michael Francis Joseph, Assistant United States Attorney, Greensboro, N.C., for appellee.
 On Brief: Robert H. Edmunds, Jr., United States Attorney, Greensboro, N.C., for appellee.
 M.D.N.C.
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 Before SPROUSE and WILKINS, Circuit Judges, and GERALD W. HEANEY, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 This appeal arises from the joint trial of Luis Carvajal-Castillo, Jesus Garcia, Alphonso Lewis, Arturo Brown, Yezica Vejarno, and Lovansa Roach for various offenses related to the distribution of crack cocaine in Greensboro, North Carolina, during the summer of 1990. A jury convicted all defendants of conspiracy to possess with intent to distribute and with conspiracy to distribute crack cocaine in violation of 21 U.S.C. § 841(b)(1)(A). All defendants except Brown were also convicted of possession with intent to distribute 13.3 grams of crack cocaine on July 18, 1990, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). Garcia, the group's reputed leader, was also convicted of a second count of possession with intent to distribute one kilogram of crack cocaine on July 9, 1990, and with maintaining a crack house in violation of 21 U.S.C. § 856(a)(1) and (b).
 
 
 2
 In this consolidated appeal, the five appellants[1] raise various issues relating to the conduct of the trial and to sentencing. We affirm all of the convictions and sentences, but reverse the upward adjustment of Garcia's sentence under the Sentencing Guidelines for obstruction of justice, and remand to the district court for the resentencing of Garcia.
 
 
 3
 From February 1990 through July 18, 1990, the defendants were engaged in the distribution of crack cocaine in the Greensboro area of North Carolina. The police were aided in their investigation of the drug activity when an informant telephoned the police on July 18, 1990, advising them that Latonia Walker's public housing apartment was controlled by a group of drug dealers. Upon receiving the information, Greensboro police officers, accompanied by Drug Enforcement Administration (DEA) agents, visited the apartment on the same day. Four of the defendants were present, and, as a result of a consensual search of the apartment, the police found 13.3 grams of crack cocaine and arrested those present. Further investigation resulted in the arrests of Garcia and Brown.
 
 CARVAJAL-CASTILLO
 
 4
 Carvajal-Castillo asks us to reverse his convictions for conspiracy and for possession with intent to distribute crack cocaine on the ground that his Sixth Amendment right to a fair trial was violated when the prosecutor elicited prejudicial evidence from a witness.
 
 
 5
 At issue is the testimony of a police officer elicited to establish Carvajal-Castillo's identity through a description of his physical appearance. After defense counsel had stipulated identity and the court had sustained a defense objection to one question about Carvajal-Castillo's appearance, the prosecutor asked if the witness had observed Carvajal-Castillo's teeth. The witness responded that "he had gold-capped teeth, one of which was a marijuana leaf--." Carvajal-Castillo contends that this testimony was not only irrelevant, but highly prejudicial.
 
 
 6
 The government concedes that the question was improper but argues that it did not prejudice Carvajal-Castillo to the extent that he was denied the right to a fair trial. See United States v. Brockington, 849 F.2d 872, 875 (4th Cir.1988) (reversal not appropriate unless defendant was unfairly prejudiced by the improper prosecutorial conduct). Evaluating the entire trial in light of the factors discussed in United States v. Harrison, 716 F.2d 1050, 1052 (4th Cir.1983), cert. denied, 466 U.S. 972 (1984), we conclude that the testimonial remark was not sufficiently prejudicial to merit reversal. It was an isolated statement, and the defense objection to it was sustained. In light of the overwhelming evidence of Carvajal-Castillo's complicity in the crimes of which he was accused, this question and its response could not have substantially prejudiced the jury. Finally, we are persuaded that the prosecution did not intend to deliberately divert the jury's attention to extraneous matters.
 
 GARCIA
 
 7
 Garcia, the alleged leader of the conspiracy, was convicted of two counts of possession of crack with intent to distribute, one conspiracy count, and one count of operating a crack house. His base offense level under the Sentencing Guidelines is thirty-six. The court added a two level enhancement for the use of a firearm, a four level enhancement for his leadership role, and a two level enhancement for obstruction of justice. The total offense level of forty-four mandated a life sentence. Garcia appeals the court's three upward adjustments of the base offense level, as well as its refusal to declare a mistrial based on a Bruton violation.
 
 
 8
 We first consider the Bruton argument. In the portion of the trial relating to Vejarno, DEA Agent Ingram testified with the aid of his notes. All references to defendants other than Vejarno had been redacted from the statement prior to trial. Ingram stated that:
 
 
 9
 [Vejarno] told me that during the month of July she had been recruited in Brooklyn, New York, for the purpose of bringing a package of crack cocaine to Greensboro, delivered it to an individual that she called "Alberto," and she had been paid a thousand dollars, she concealed it on her person, and that she had been staying at 702 Jennifer, and that's where the crack cocaine had been distributed from while she was there.
 
 
 10
 Because "Alberto" is Garcia's nickname, he argues that this testimony implicates his Sixth Amendment right to confront the witness. See Bruton v. United States, 391 U.S. 123, 124-26 (1968). Although the government concedes a Bruton violation, it argues that the error is harmless because of the overwhelming evidence against Garcia. Even constitutional error may not be grounds for reversal, of course, if the court finds it harmless beyond a reasonable doubt. See Chapman v. California, 386 U.S. 18, 24 (1967); see also Brown v. United States, 411 U.S. 223, 231 (1973) (overwhelming evidence of guilt renders error harmless).
 
 
 11
 In addition to the statement made by Vejarno to DEA Agent Ingram, the testimony of three witnesses demonstrated that Garcia sold crack cocaine on numerous occasions, cut it for distribution, solicited others to collect and deliver the drug to him, transferred money to other members of the group, and used the apartment as a center for drug distribution. The testimony complained of here was offered as evidence against Vejarno, rather than Garcia, and the court instructed the jury, both before and after the testimony was given, that the evidence was limited to use against Vejarno. Accordingly, any impact on the jury relating to Garcia was, to that extent, diminished. We, therefore, agree that the error was harmless and affirm the district court's decision to deny Garcia's motion for mistrial.
 
 
 12
 We also find no error in two of the upward adjustments to Garcia's base offense level. Adequate evidence exists to support the two level adjustment for possession of a dangerous weapon, U.S.S.G. § 2D1.1(b)(1), and the four level adjustment for his leadership role in the drug conspiracy, U.S.S.G. § 3B1.1(a). We reverse, however, the two level upward adjustment for obstruction of justice.
 
 
 13
 The court imposed the two level adjustment under Guideline § 3C1.1 for obstruction of justice because Garcia, while being interviewed by the probation officer preparing the presentence report, stated that his name was "Beto Cabeza." A subsequent criminal record check revealed that Garcia had two arrests for minor offenses under different names, among them Jesus Garcia. The government justifies the enhancement on the ground that Garcia gave a false name and, alternatively, denied having a prior criminal history.
 
 
 14
 The government, however, offered no evidence that Garcia's true name was not "Beto Cabeza." He was identified as Jesus Garcia through a fingerprint check, but, given that he was prone to using false names, there is no evidence in the record to demonstrate that his true name is Garcia, Cabeza, or something else. The government also claimed that a § 3C1.1 enhancement applied because Garcia lied to a probation officer, stating that he had no criminal record. Explaining that his statements resulted from a misunderstanding on his part about what constituted a criminal record, Garcia denied lying and instead maintained that he did not understand English well. The district court did not expressly resolve this dispute, but it is apparent to us that the court rejected the position advanced by the government. We cannot say this determination was clearly erroneous. Accordingly, we reverse the two level upward adjustment for obstruction of justice, lowering the offense level to forty-two, and remand to the district court for resentencing.
 
 LEWIS
 
 15
 Lewis, convicted of both conspiracy and possession with intent to distribute crack cocaine, argues that the trial court erred by denying his motion for disclosure of the identity and production of the informant and by denying his motion for acquittal.
 
 
 16
 As we previously noted, the police investigation leading to the defendants' apprehension, arrest, trial, and conviction was precipitated by an informant's telephone call to police headquarters in which the informant stated that the drug dealers were then present at Walker's apartment. At a pre-trial hearing, Lewis moved for the disclosure of the identity of the informant, but the court denied the motion. According to police officers testifying at the hearing, the informant told police that a group of "Jamaicans" who were dealing in drugs had taken over the apartment of Latonia Walker and were then present at the apartment.
 
 
 17
 The main thrust of Lewis's argument is that the court's ruling denied him the opportunity to mount an effective defense of "mere presence." Lewis claims if the informant had testified he would have established that Lewis was not one of the people the informant reported was involved with drugs.
 
 
 18
 Recognizing the important role played by informants in assisting the police, the courts have conferred anonymity upon such tipsters so they are not subject to reprisal for assisting the government. Roviaro v. United States, 353 U.S. 53, 59 (1957). The privilege has been set aside, however, when the identity of an informant is essential to the defense, or when the informant is an actual participant in the crime. See id. at 64; United States v. Price, 783 F.2d 1132, 1137 (4th Cir.1986). The Supreme Court has counseled that the public interest in protecting the flow of information must be balanced against the individual's right to prepare a defense. See Roviaro, supra, at 62. In balancing the competing interests, a court must take into account the crime charged, possible defenses, the possible significance of the informant's testimony, and other relevant factors. Id.
 
 
 19
 Applying that balancing test, we must reject Lewis's claim. He advanced the mere presence defense at trial and does not adequately explain to us why the presence of the informant at trial was crucial to it. There is no evidence that the informant was a participant in the conspiracy or played a role in the offense. Consequently, any evidence the informant would have offered concerning Lewis' participation would have been speculative. Accordingly, we find that the court did not abuse its discretion in denying the motion to disclose the identity of and produce the informant.
 
 
 20
 Lewis also claims that the court erred in denying his motion for acquittal on both the possession and conspiracy counts because there was insufficient evidence to convict him. See United States v. Schocket, 753 F.2d 336, 340 (4th Cir.1985) (to establish constructive possession of contraband, government must prove defendant knows of its presence and exercises dominion and control over it); United States v. Dominguez, 604 F.2d 304, 310 (4th Cir.1979), cert. denied, 444 U.S. 1014 (1980) (requiring government to prove defendant participated voluntarily in the conspiracy).
 
 
 21
 Our review of the testimony of three witnesses, however, discloses more than sufficient evidence to sustain the jury's verdict on both the possession and conspiracy charges. The testimony established that Lewis lived with his co-conspirators in Walker's apartment, entered the apartment only after using a coded knock, sold crack, transferred the proceeds to fellow conspirators, prepared a large block of cocaine for sale by cutting it with razor blades, solicited Walker to travel to New York to procure more drugs for sale in Greensboro, accompanied her on that trip, was seen in New York by other members of the conspiracy, and was handed packages of crack cocaine by the group leader.
 
 BROWN
 
 22
 Brown was convicted of conspiring to possess crack cocaine with the intent to distribute it during the period from February 1990 to July 18, 1990. Because he was not eighteen until his birthday on May 4, 1990, the jury was instructed that, in order to find him guilty, they had to find that Brown was a member of the conspiracy and that some member of the conspiracy committed an overt act in its furtherance after Brown became eighteen.
 
 
 23
 Brown had also been charged in Count Two, along with Garcia and Roach, of possession with intent to distribute one kilogram of crack cocaine on July 9, 1990. The court dismissed that charge as to Brown and Roach because, as the court stated, "the only evidence there would involve, at most, Alberto [Garcia]."
 
 
 24
 At Brown's initial sentencing on January 31, 1991, the parties stipulated his involvement with 50-150 grams of cocaine base, producing a base offense level of thirty-two. The court reduced this by two levels for acceptance of responsibility and sentenced Brown to 108 months in prison.
 
 
 25
 Six days later, at a subsequent sentencing hearing convened sua sponte by the court, the trial court noted that it had been under the mistaken belief at sentencing that Count Two was dismissed because Brown was a juvenile at the time that offense occurred. Realizing that, as a result of this misunderstanding, the kilo of crack cocaine from the dismissed charge had not been included in calculating the base offense level, the court recalculated the level at thirty-eight, deducted the two point downward departure, and sentenced Brown to 188 months in prison.
 
 
 26
 Brown appeals his resentencing on two grounds--that the dismissal of Count Two clears him of any responsibility for the possession of crack cocaine on July 9, 1990, and that the court lacked jurisdiction to resentence. We are unpersuaded. The first argument ignores the law which makes coconspirators liable for the acts of one another, see Pinkerton v. United States, 328 U.S. 640, 646-47 (1946); United States v. Cummings, 937 F.2d 941, 944 (4th Cir.), cert denied, 60 U.S.L.W. 3343 (1991), and it also ignores the case law interpreting the Sentencing Guidelines on conspiracy. See United States v. Vinson, 886 F.2d 740, 742 (4th Cir.1989), cert. denied, 493 U.S. 1062 (1990) (defendants convicted of conspiracy to be sentenced on the basis of their conduct or that of coconspirators in furtherance of conspiracy known to or reasonably foreseeable by defendants).
 
 
 27
 Consequently, we find no merit in Brown's first contention. Evidence at trial demonstrated that Brown had been an active member of the conspiracy since its inception in February 1990 and either witnessed, participated in, or could have foreseen the multiple drug transactions, as well as the transfers of drugs from New York to Greensboro. Our review of this evidence fails to convince us that the court committed clear error in finding that, at a minimum, Brown could have foreseen the criminal activity involving the drugs on July 9.
 
 
 28
 Brown's jurisdictional challenge also fails. He first contends that the district court's reliance on United States v. Cook, 890 F.2d 672 (4th Cir.1989), is misplaced.[2] In Cook the district court incorrectly applied a guideline sentence that required a minimum term of three months' incarceration and, after discovering its error, sua sponte corrected the sentence. We upheld the resentencing, ruling that a district court may modify a sentence to correct an "acknowledged and obvious mistake" in interpreting the pertinent guidelines applied at the original sentencing if this is accomplished "during that period of time in which either party may file a notice of appeal." Id. at 675.
 
 
 29
 As Brown points out, the district court in Cook had clearly erred in misinterpreting a specific guideline. See United States v. Cook, 716 F.Supp 3, 4 (S.D.W.Va.1989). Brown argues that the varying circumstances in this case require a different outcome. Here, the court had accepted the stipulated amount of drugs for sentencing purposes, the government raised no objection to the final sentence, and the court did not misinterpret a specific guideline. Brown emphasizes Cook 's language that "[t]he power of a district court to amend a sentence does not extend to a situation where the district judge simply changes his mind about the sentence." Cook, 890 F.2d at 675. We view this as a close question; however, we are finally persuaded that the sentencing circumstances at issue here do not represent a "change of mind" concerning the length of the sentence by the court, but rather a recognition that the court had misunderstood the facts presented. We perceive no principled difference in this respect between the Cook court's correction of its mistake as to the law and the court's correction here of its mistake as to the facts.
 
 
 30
 Brown next asks us to apply the case law interpreting Rule 4(a) of the Federal Rules of Appellate Procedure, which states the time periods for filing civil appeals, to Rule 4(b), which governs criminal appeals. He states correctly that courts have interpreted Rule 4(a)'s limits to be "mandatory and jurisdictional." See Browder v. Director, Dep't. of Corrections, 434 U.S. 257, 264 (1978); Washington v. Bumgarner, 882 F.2d 899, 900 (4th Cir.1989), cert. denied, 493 U.S. 1060 (1990). Brown asks us to rule that the filing of his notice of appeal on February 1 divested the district court of jurisdiction so that it was without authority to resentence him. See Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982). No court, however, has extended the case law developed under Rule 4(a) to Rule 4(b), and we think that the underlying rationales of avoiding duplicative actions and of conserving judicial resources do not apply with the same force in the criminal context.
 
 
 31
 Brown finally raises two issues involving the admission of evidence and the court's refusal to dismiss the conspiracy count. Finding no merit in his arguments, we affirm the decisions of the district court.
 
 VEJARNO
 
 32
 Yezica Vejarno was convicted of conspiracy and of possession with intent to distribute crack cocaine. She argues for reversal on the ground that there was not sufficient corroborative evidence of her confession to sustain her conviction.
 
 
 33
 After police officers found the 13.3 grams of crack cocaine in the Walker apartment on July 18, 1990, Vejarno gave a statement to DEA agent John Ingram in which she said she had been recruited in New York to bring crack cocaine to Greensboro. She also admitted traveling by air from New York to Greensboro with a concealed package of cocaine on her person and staying at the apartment from which crack cocaine was distributed. These statements, she argues, were not properly corroborated at trial. See Smith v. United States, 348 U.S. 147, 152 (1954) (citing cases holding that accused may not be convicted on his own uncorroborated confession).
 
 
 34
 Our review of the record leads us to conclude, to the contrary, that sufficient evidence exists to corroborate Vejarno's admissions. Edna Edwards testified that she saw Vejarno in New York with other members of the conspiracy, and both DEA agent Ingram and Greensboro Police detective Berkely Blanks testified that they saw Vejarno at the apartment where a distribution-size quantity of crack cocaine was seized. Latonia Walker testified that Vejarno brought crack cocaine to Greensboro from New York and described the method that Vejarno had confessed to Agent Ingram--concealing the drug by wearing its package as a sanitary napkin.
 
 
 35
 In view of the above, we affirm the convictions of Luis CarvajalCastillo, Jesus Garcia, Alphonso Lewis, Arturo Brown, and Yezica Vejarno. We reverse that portion of Garcia's sentence pertaining to a two level upward adjustment for obstruction of justice and remand his case to the district court for resentencing.
 
 
 36
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 [1]
 Roach does not appeal
 
 
 [2]
 Cook is one of the cases on which new Rule 35(c) of the Federal Rules of Criminal Procedure is based. Because this rule was not effective until December 1, 1991, however, Rule 35(c) is without effect here