39 F.3d 1179
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Sukarno Kaseem TURNER, Defendant-Appellant.
 No. 94-5211.
 United States Court of Appeals, Fourth Circuit.
 Argued September 29, 1994.
Decided October 28, 1994.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, District Judge. (CR-93-401-A)
 ARGUED: Alan Hideto Yamamoto, Alexandria, VA, for Appellant.
 ARGUED: Vicki Lynn Curcio, Sp. Asst. U.S. Atty., Alexandria, VA. ON BRIEF: Helen F. Fahey, U.S. Atty., Alexandria, VA, for Appellee.
 E.D.Va.
 AFFIRMED.
 Before HALL, NIEMEYER and HAMILTON, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Sukarno Kaseem Turner appeals his convictions on one count of conspiracy to distribute and two counts of distribution of phencyclidine (PCP). He challenges the sufficiency of the evidence to support his convictions. We affirm.
 
 I.
 
 2
 According to the only government fact witness,[1] undercover Drug Enforcement Administration Task Force agent Louis Forges, these are the facts:
 
 
 3
 On June 1, 1993, Forges met a confidential informant who agreed to set up a sale of PCP from "David," who turned out to be David Lewis. The informant scheduled the deal for that very day, and Forges met Lewis outside a convenience store in Springfield, Virginia. There were two men in the car Forges met. Forges walked to the driver's side and began speaking to the men; he quickly ascertained that the passenger was Lewis. The driver and owner of the car was appellant Sukarno Turner.[2]
 
 
 4
 Forges and Lewis carried out the deal under Turner's nose. Forges asked if Lewis had the drugs and if he could smell some to ensure that it was PCP. Lewis said yes, and he handed Turner a small, open brown bottle. Turner held the bottle to Forges' nose, and Forges smelled an odor that he recognized from his training as PCP. Forges asked if the price was "still $300 a bottle" (the price the informant had quoted), and Lewis said yes. Lewis handed Turner another bottle, which Turner passed to Forges. Forges took $500 from one pocket and handed it across Turner to Lewis. Then he came up with the additional $100 from another pocket, and he gave it to Turner.[3]
 
 
 5
 A few days later, Forges had the informant try to arrange another deal. The informant set up a phone call between Lewis and Forges. Lewis could not arrange to sell any PCP that day. Forges gave Lewis his beeper number and asked him to call when he had the drugs and could get a ride to Virginia.
 
 
 6
 On June 7, Lewis paged Forges on his beeper and arranged a deal at a restaurant in Alexandria. Again Lewis arrived with Turner, but this time the transaction took place at Forges' car. Turner and Lewis walked around the building toward Forges. As Lewis and Forges exchanged money and drugs ($900 for three bottles), Turner stood two to three feet away. According to Forges, Turner "was looking at both myself and Mr. Lewis and also turning and observing the parking lot or looking at the parking lot."
 
 
 7
 On June 9, Lewis again paged Forges and set up a third sale at the same restaurant. The mode of this deal was similar to that of the second. With Turner behind him, Lewis walked to Forges' car. Turner stopped a few feet away and stared while the deal was made. This time, an arrest team was waiting, and Lewis and Turner were apprehended.
 
 
 8
 At the time of his arrest, Lewis told the officers that the PCP belonged to Turner. In response to a question from Forges, Turner said that he remembered Forges' smelling the open bottle of PCP during the first sale.
 
 II.
 
 9
 According to the only defense witness, Lewis, the facts were quite different. In general, he testified that Turner had nothing to do with his drug dealing; he did it all by himself in order to sustain his own habit. He said that Turner was just a buddy from the neighborhood who would give him a ride when he needed one, and that he told Turner only that he needed to pick up some money from some guy. He said that Turner did not ask him why, because Turner knew it was none of his business, and that the only money Turner received for the rides was a few dollars for gas.
 
 
 10
 In particular, Lewis denied that Forges had smelled an open bottle of PCP during the first deal or that PCP even has a distinctive odor. Moreover, he denied that Forges asked him anything about the price of the drugs or that Turner ever touched the bottles or any of the money.
 
 
 11
 As to the second transaction, Lewis flatly denied that Turner had accompanied him to Forges' car. According to Lewis, Turner's car had overheated, and Turner stayed with the car during the deal. On the third deal, he said that Turner was walking a bit behind because he had made a phone call at a gas station across the street. Lewis acknowledged telling the officers that the PCP belonged to Turner, but stated that he had lied about that.
 
 
 12
 Finally, Lewis said that he had simply run into Turner on the first two occasions, but had paged him on Turner's beeper for the third ride.
 
 III.
 
 13
 Lewis and Turner were named in a four-count indictment charging them with conspiracy and three substantive counts of possession with intent to distribute PCP. 21 U.S.C. Secs. 841, 846. Lewis pled guilty, but he refused a plea agreement that would have required him to cooperate with the government. As we recounted above, he was the only defense witness at Turner's short jury trial. Turner was convicted of conspiracy, acquitted on the first substantive count, and convicted on the second and third counts. He was sentenced to 63 months, and he appeals.
 
 IV.
 
 14
 Turner challenges the sufficiency of the evidence. The convictions must be affirmed if any reasonable trier of fact could have found the elements of the crimes established beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (1979).
 
 
 15
 Turner focuses his attack on the government's evidence of an agreement between Lewis and Turner to achieve a single criminal objective. We think that the evidence was sufficient. Turner certainly knew what Lewis was up to, at least after the first transaction--when, according to Forges, Turner handled both the drugs and the money. He was present at each of the three transactions. The jury could rationally have interpreted his behavior on the second and third occasions as acting as lookout. From these facts, a reasonable jury could infer an agreement between Turner and Lewis to act in concert in the distribution of PCP.
 
 
 16
 Inasmuch as there is sufficient evidence of conspiracy, then the possession with intent to distribute convictions are easily affirmed, because every member of a conspiracy is chargeable with all foreseeable substantive crimes committed in furtherance of it. Pinkerton v. United States, 328 U.S. 640, 647-648 (1946); United States v. Cummings, 937 F.2d 941, 944 (4th Cir.), cert. denied, 112 S.Ct. 395 (1991). Moreover, at the very least, Forges' testimony showed that Turner aided and abetted Lewis' distributions, and the court gave an aiding and abetting instruction, upon which the jury could have found Turner guilty as a principal. 18 U.S.C. Sec. 2(a).
 
 
 17
 The convictions are affirmed.
 
 AFFIRMED
 
 
 [1]
 Sergeant Douglas Comfort of the Vienna (Virginia) Police Department testified generally about the characteristics and use of PCP
 
 
 [2]
 Lewis had no car of his own
 
 
 [3]
 Forges explained that each officer is allotted only $500 in buy money, and he had had to pool his money with another officer's for this deal, which explains why he had two different rolls of cash