**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 97-4029

SANDRA GAIL MONTGOMERY, a/k/a
Sandra Kendrick Montgomery,
Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of North Carolina, at Greensboro.
Richard C. Erwin, Senior District Judge.
(CR-95-282)

Argued: April 7, 1998

Decided: July 7, 1998

Before WILKINSON, Chief Judge, and HAMILTON and
MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** William Stimson Trivette, FEDERAL PUBLIC
DEFENDER'S OFFICE, Greensboro, North Carolina, for Appellant.
Timika Shafeek, Assistant United States Attorney, Greensboro, North
Carolina, for Appellee. **ON BRIEF:** John Stuart Bruce, Acting Fed-
eral Public Defender, Greensboro, North Carolina, for Appellant.
Walter C. Holton, Jr., United States Attorney, Greensboro, North Car-
olina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Sandra Montgomery pled guilty in district court to several charges relating to credit card fraud, reserving the right to appeal the court's denial of her motion to suppress evidence. She now appeals that ruling on two grounds. First, she claims that the district court should have suppressed evidence resulting from a search of her room because the search warrant was facially insufficient. Next, she contends that she was interviewed by a federal agent in violation of the Sixth Amendment and that her statements in that interview must be suppressed. In addition, Montgomery appeals her sentence, arguing that the district court erred in imposing it to run consecutively with her state prison terms. For the reasons that follow, we affirm the denial of her suppression motion and we also affirm her sentence.

I.

On August 25, 1995, the High Point Orthopedic Sports & Medicine Clinic reported to the High Point, North Carolina, police department that a customer, Darren Posten, had purchased almost $9,000 worth of services with a stolen Bank of New York credit card issued in the name of Sandra K. Montgomery. Detective Sandra Vuncannon was placed in charge of the case. In the course of her investigation, Vuncannon interviewed a confidential informant who had given her reliable information in the past. That informant indicated he knew that the defendant, Sandra Gail Montgomery, possessed a number of fraudulent credit cards and kept records relating to her criminal activity at Posten's residence. With this information Detective Vuncannon applied for an arrest warrant for Montgomery and a search warrant for Posten's residence. The text of the affidavit supporting the search warrant read as follows:

> The High Point Police Department was contacted by High Point Orthopedic and Sport Medicine, 624 Quaker Lane

2

regarding a subject in their office that on 4 August, 1995 paid his bill with a credit card referred back to their business office as stolen. As a result of subsequent investigations, a confidential and reliable informant who had in the past provided reliable and accurate information advised this Detective that in a room of the residence at [address deleted] Thomasville NC, 27263 which is described as a single story, single family, brick residence with yellow/beige trim with seven trees in the front yard and the numbers 4337 on the mailbox facing south toward NC Highway 62 and a driveway on the south side of the house contained fraudulently obtained documents concerning credit card theft and fraud. The informant further alleges the suspect, Sandra Gail Montgomery, White Female approximately thirty five years of age, had resided at this location in the first bedroom on the left as you walk down the hall from the dining area for "several months" with out paying room and board. This room is to contain documents pertaining to the crime of credit card fraud, to wit; correspondance [sic], applications, and any and all other documents related to obtaining financial transaction cards in a manner other than prescribed by North Carolina and Federal laws.

A search of the house uncovered the same items identified by the confidential informant in the place he indicated.

Greensboro police arrested Montgomery on August 27, 1995, and took her to the High Point police department. Montgomery signed a waiver of her Miranda rights at that time. On August 28 she was arraigned in state court, and a public defender was appointed to represent her. The very next day, Agent Nick Mentavlos of the Secret Service and another federal agent interviewed Montgomery while she was in state custody. The government concedes that the agents, not Montgomery, initiated this contact, and that Montgomery's counsel was neither present nor informed about the interview. Montgomery again waived her Miranda rights and gave a written statement.

In the days that followed, Montgomery made numerous attempts to contact Mentavlos to request another meeting. On September 7, 1995, Montgomery wrote a sixteen-page letter to Mentavlos. In this letter

3

Montgomery expressed her interest in talking further with Mentavlos, and she detailed the lengths to which she had gone to contact him:

> I've been searching for about four days to find your card to write this letter. I've asked at least 2 times to speak to you or the U.S. Marshalls [sic] who have a detainer on me, but, I've not received a response from either request. . . . I did phone you, but, you were not in and when I didn't hear back from you, I was reluctant to write you. But, I have figured out that if I don't tell you the entire story of this charade, you won't ever know much because the party where most of your information came is not a reliable source.

The letter discussed Montgomery's personal difficulties and asserted that she could exonerate herself by telling her side of the story to Mentavlos.

After receiving this letter, Mentavlos agreed to interview Montgomery again. On September 12, they met. He did not read her the Miranda rights, and she did not execute a waiver. In this interview Montgomery made essentially the same statements she had made in the August 29 interview.

Montgomery was indicted in federal court for credit card fraud on November 27, 1995. She filed a motion to suppress evidence, including the fruits of the executed search warrant and her statements to the federal agents on August 29 and September 12. The court granted her motion to suppress the August 29 interview on the ground that the interview violated the Sixth Amendment. The court refused to suppress the September 12 interview, however. It also found that the search warrant was facially invalid but that the evidence was still admissible under the good faith exception. Montgomery subsequently pled guilty, reserving the right to appeal the suppression motion.

Montgomery was on probation on North Carolina state charges when she committed the federal crimes to which she pled guilty. By the time she was sentenced in federal court, Montgomery was in North Carolina state prison for a number of state convictions, including a ten-year sentence for violating the terms of her probation. Montgomery argued that her federal sentence should run concurrently with

4

these state sentences. The court disagreed and ruled that the federal sentence should run consecutively. Montgomery was sentenced to 33 months of imprisonment and three years of supervised release. She now appeals.

II.

A.

Montgomery first argues that the search of her room in Posten's residence was illegal. She claims that the search warrant was so inadequate on its face that it lacked any indicia of probable cause. Because an officer could not rely on such a warrant in good faith, she argues, the evidence from the search must be suppressed. We disagree.

Assuming without deciding that the search warrant was facially invalid, the evidence may still be admitted if the police relied on the warrant in good faith. In United States v. Leon , 468 U.S. 897 (1984), the Supreme Court held that evidence seized under a facially invalid search warrant will be suppressed only if "the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." Id. at 926. This good faith exception is not all-inclusive, however. A warrant that is "based on an affidavit that was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" would be insufficient to support a finding of good faith, and any evidence received pursuant to that warrant must be excluded. United States v. Hyppolite, 65 F.3d 1151, 1156 (4th Cir. 1995) (citing Leon, 468 U.S. at 923).

When a warrant refers to information obtained from a confidential informant, the good faith inquiry hinges on the amount of corroboration provided. For instance, the bare assertion that a confidential informant has been reliable in the past or has a truthful demeanor is insufficient by itself to support a finding of good faith. See United States v. Wilhelm, 80 F.3d 116, 121-22 (4th Cir. 1996). On the other hand, an affidavit can support a finding of good faith if it includes details such as the specific type of contraband involved, the location of the contraband in a suspect's house, or descriptions of the suspect's

5

movements and personal activities. See id. at 122 (citing United States v. Edwards, 798 F.2d 686 (4th Cir. 1986)); United States v. Lalor, 996 F.2d 1578, 1580, 1583-84 (4th Cir. 1993).

In this case the affidavit filed by Detective Vuncannon indicated that the information was obtained from an informant who had provided reliable information in the past. Unlike the bare bones affidavit in Wilhelm, Vuncannon's affidavit contained other facts which fleshed out the informant's story. It detailed information from the informant that identified categories of fraudulently obtained documents pertaining to credit card fraud. See id.  It also described the exact location in Posten's house where the documents could be found. See id. In addition, it gave personal details about Montgomery's activities, such as the fact that she lived in the house without paying rent. See id. These details provided sufficient corroboration to give the police a good faith reason to believe that the warrant was properly issued. Finally, there is nothing in the record to indicate that Detective Vuncannon was anything other than honest and careful in preparing her affidavit. Accordingly, we conclude that the police acted in good faith under the search warrant, and the fruits of the search should not be excluded.

B.

Montgomery also challenges the district court's refusal to suppress statements she made to Agent Mentavlos in the September 12 meeting. She argues that Mentavlos violated the Sixth Amendment by meeting with her after she had been indicted and without her counsel present. Because she initiated the September 12 interview with Mentavlos, we disagree.

"The purpose of the Sixth Amendment counsel guarantee . . . is to protec[t] the unaided layman at critical confrontations with his expert adversary, the government, after the adverse positions of government and defendant have solidified with respect to a particular alleged crime." McNeil v. Wisconsin, 501 U.S. 171, 177-78 (1991) (citation and internal quotations omitted; emphasis and second alteration in original). If the police initiate interrogation of a defendant after indictment and outside the presence of counsel, they violate the Sixth Amendment. See Michigan v. Jackson, 475 U.S. 625 (1986). "But

6

nothing in the Sixth Amendment prevents a suspect charged with a crime and represented by counsel from voluntarily choosing, on his own, to speak with police in the absence of an attorney." Michigan v. Harvey, 494 U.S. 344, 352 (1990).[1]

In United States v. Cummings, 937 F.2d 941 (4th Cir. 1991), the defendant (Cummings) was indicted and in custody on state charges when he asked a state police officer to arrange a meeting between himself (Cummings) and federal agents. The police officer relayed the message to an ATF agent, who subsequently met with Cummings and obtained incriminating statements. We held that by asking to meet with the ATF agent, Cummings had waived his Sixth Amendment right to counsel. See id. at 946-47.

Here, the district court found that Montgomery voluntarily initiated the contact with Agent Mentavlos that prompted the meeting on September 12. This is reflected in the content of Montgomery's letter, which detailed the lengths to which she went to get a meeting with Mentavlos. The district court concluded that Montgomery had therefore waived her Sixth Amendment right to counsel. Since the record establishes that Montgomery, not the government, initiated the September 12 meeting, we affirm the district court's conclusion that Mentavlos did not violate the Sixth Amendment and that Montgomery's statements to him are admissible.

C.

Montgomery also challenges the sentence imposed by the district court. She argued unsuccessfully to the district judge that he should have ordered her federal sentence to run concurrently with her North Carolina sentence rather than consecutively. She now asks that we remand on the ground that the district court misapplied the relevant law in making its determination.

The district court has discretion to choose either concurrent or consecutive terms of imprisonment. See United States v. Johnson, 138

---

[1] Both parties concede that the police-initiated questioning of Montgomery on August 29, 1995, violated the Sixth Amendment.

F.3d 115 (4th Cir. 1998). This discretion is informed by certain statutory factors:

> the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most efficient manner; the kinds of sentences available; pertinent guidelines; pertinent policy statements; the need to avoid unwanted sentence disparity; and the need to provide restitution.

See id. at 119 (citing 18 U.S.C. § 3553(a)) (footnote deleted). The district court need not engage in a ritualistic incantation of these factors, however. See id. at 120. If the sentence is consistent with the Sentencing Guidelines, there is no need for a district court to cite specific factors to explain its decision, because it is presumed that the court "properly considered the pertinent statutory factors." Id. at 119.

The Sentencing Guidelines clearly state that "[i]f a defendant was on . . . state probation . . . at the time of the instant offense, and has had such probation . . . revoked, the sentence for the instant offense should be imposed to run consecutively to the term imposed for the violation of probation." U.S.S.G. § 5G1.3, comment. (n.6). We are bound to follow the commentary of the guidelines as authoritative. See Stinson v. United States, 508 U.S. 36 (1993). Montgomery does not deny that she was under state probation at the time she committed the instant offense or that (by the date sentence was imposed here) she was serving a ten-year sentence in state prison for violating that probation. The district court's decision to impose a consecutive sentence is therefore consistent with the guidelines and a proper exercise of discretion.

Furthermore, the district court articulated its reasons for imposing a consecutive sentence by commenting on the severity of Montgomery's crime. See J.A. 211 (noting that "something like $50,000 was lost" as a result of Montgomery's fraud). The court also referred to Montgomery's extensive criminal record in explaining its decision.

8

See J.A. 210-11; see also J.A. 263-73 (presentence report) (detailing 25 arrests and 12 convictions, including convictions for felony embezzlement and forgery). The court cited these reasons (both of which are statutory factors for determining whether a consecutive sentence is warranted) to support its decision to impose a consecutive sentence. We find that the district court properly considered the applicable law in imposing a consecutive sentence. Accordingly, we affirm Montgomery's sentence.[2]

The order denying Montgomery's motion to suppress and her sentence are both

AFFIRMED.

_____

[2] Montgomery further argues that the district court miscalculated her criminal history points. She concedes, however, that the alleged error did not affect her overall criminal history level of VI and, therefore, had no effect on her sentence. See Appellant's Br. at 33. As a result, we reject this claim.

9